NAMRO HOLDING CORP., Appellant, *v.* CITY OF NEW YORK et al., Respondents.

First Department, December 20, 1962.

*Abraham Engelman* of counsel (*Millard E. Theodore,* attorney), for appellant.

*Alfred Weinstein* of counsel (*Seymour B. Quel* and *Sidney Bremer* with him on the brief; *Leo A. Larkin, Corporation Counsel,* attorney), for respondents.

432

McNally, J. In an action for a declaratory judgment plaintiff appeals from an order denying its motion for summary judgment and granting summary judgment dismissing the complaint and the judgment thereon entered.

The question presented is whether rule 2.5 of the Factory Exit Rules adopted by the Board of Standards and Appeals of the City of New York to effectuate the provisions of sections 270 and 271 of the Labor Law is applicable to the plaintiff's premises.

Plaintiff is the owner of 34–36 East 10th Street, County and City of New York. These are tenant-factory buildings within the contemplation of the Labor Law. In July, 1951 the Department of Housing and Buildings of the Borough of Manhattan issued a violation against said premises as follows:

" You will please take notice that there exists a violation of Section 267 and 272 of the Labor Law at the premises described, in that

" 1. of failing to properly maintain horizontal exits as follows:

" (a) On various floors the floor areas on both sides of the horizontal exit are not occupied by the same tenant."

The application of rule 2.5 on the conceded facts depends on whether it is applicable to tenant-factory building more than 5 stories in height. Plaintiff's structures are 10 stories in height.

The Department of Buildings, and its predecessor the Department of Housing and Buildings, on the basis of the violation filed July, 1951, issued three departmental orders respectively dated January 20, 1954, August 29, 1957 and May 4, 1959. On May 19, 1959 in the Court of Special Sessions, Borough of Manhattan, plaintiff was found guilty of failure to comply with a departmental order in violation of section 643a–9.0 of chapter 26 of the Administrative Code. Said provision of the Administrative Code defines as a misdemeanor the knowing violation of the order of the Commissioner of the Department of Buildings. Plaintiff's conviction was affirmed by the Appellate Division (10 A D 2d 702) which held that the violation may not be collaterally reviewed in a prosecution for failure to comply with the order of the Commissioner of the Department of Buildings based thereon. The Court of Appeals affirmed without opinion (8 N Y 2d 1131); two Judges dissented with the observation that the affirmance of the majority was on the ground that the notice of violation may not be collaterally reviewed without reaching the question as to whether, in fact, there was a violation.

Prior to 1955 the Board of Standards and Appeals adopted Factory Exit Rules " to effectuate the provisions of sections 270 and 271 of the Labor Law ". Section 270 applies to factory buildings erected after October 1, 1913; it includes the requirement of

two exits on each floor, one of which may be a horizontal exit. Section 271 applies to factory buildings erected after October 1, 1913 and also makes the same provision as section 270 for two exits on each floor. Section 271 (subd. 2, par. b) provides: " b. The board may adopt rules requiring the enclosure of stairways serving as required exits in buildings five stories or less in height or in particular classes thereof when it finds such requirements necessary to secure the safety of the occupants in case of fire."

Prior to 1955 rule 6 of section 2 of the Factory Exit Rules as far as relevant provided:

" Rule 6. Except as herein provided, in all factory buildings five stories or less in height, erected prior to October 1, 1913, in which there are more than twenty-five persons employed above the second story, all interior stairways, serving as required means of exit, and the landings, platforms and passageways connected therewith, shall be enclosed on all sides by partitions of fire-resisting material extending continuously from the lowest point of the stairway in accordance with the following schedule:
" * * *

" A horizontal exit, as defined in section 267 of the Labor Law, will be accepted as a compliance with this rule when both sides of the fire wall or walls are occupied on any factory floor by the same occupant."

In 1955 the Factory Exit Rules, again grounded on sections 270 and 271 of the Labor Law, were amended and renumbered as follows:

" Rule 2.1. In all factory buildings five stories or less in height, erected prior to October 1, 1913, and occupied as factory buildings on July 1, 1948, all interior stairways or ramps serving as required means of exit, and the landings, platforms and passageways connected therewith shall be enclosed on all sides by partitions having a fire resistive rating of not less than 1 hour extending continuously from the lowest point of stairway or ramp.
" * * *

" Rule 2.5. A horizontal exit as defined in section 267 of the Labor Law, will be accepted as in compliance with this rule when both sides of the fire wall or walls are occupied at such factory floor by the same occupant as provided in Rule 3.0."

Insofar as here relevant we find no difference in substance between the Factory Exit Rules prior and as amended subsequent to 1955. The rules were expressly adopted to effectuate the provisions of section 271 of the Labor Law with respect to factory buildings five stories or less in height.

The notice of violation of July, 1951 is grounded on sections 267 and 272 of the Labor Law. Section 267 insofar as relevant defines horizontal exit as follows: "1. 'Horizontal exit' means the connection by one or more openings, protected by firedoors, through a fire wall in any building, or through a wall or walls between two buildings, which doors shall continuously be unlocked and the opening unobstructed whenever any person is employed on either side of the opening."

Section 272 of the Labor Law applies to all factory buildings and supplements the provisions of sections 270 and 271 with additional requirements regarding access to exits, stairways, doors and windows and exit signs. Subdivision 5 of section 272 enables the Board of Standards and Appeals to adopt rules establishing requirements and standards for construction, equipment and maintenance of factory buildings consistent with the statute. The record does not establish any relevant Rules of the Board of Standards and Appeals promulgated on the authority of section 272.

Section 643a–5.0 of the Administrative Code of the City of New York empowers the Commissioner of Buildings to order the remedying of any condition in any building " in violation of any law, rule or regulation ". The Factory Exit Rules relied on by the defendants are expressly limited to factory buildings 5 stories or less in height and therefore inapplicable to factory buildings 10 stories in height as the plaintiff's. It does not appear and this record fails to demonstrate the exercise of the rule-making power granted in section 272 of the Labor Law in respect of the condition here involved. Nor does it appear that plaintiff is in violation of either of sections 267 and 272 as alleged in the notice of violation of July, 1951. We conclude the said violation is without the support of any " law, rule or regulation " and therefore not within the ambit of section 643a–5.0 of the Administrative Code.

The complaint alleges a justiciable dispute involving statutory construction and the scope of the Factory Exit Rules of the Board of Standards and Appeals grounded on sections 270 and 271 of the said statute. Plaintiff also alleges its exposure to criminal prosecutions and that the violation constitutes a serious cloud on the use and marketability of its property.

The underlying facts are undisputed. No issue of fact is present. Where the meaning or validity of a statute is in question and no questions of fact are present, declaratory judgment is proper. (*Dun & Bradstreet* v. *City of New York,* 276 N. Y. 198, 206.) It is also appropriate when the application of a statute

to a given case is challenged. (*Richfield Oil Corp.* v. *City of Syracuse,* 287 N. Y. 234, 239.) The fact that a declaratory judgment may serve to preclude a criminal prosecution does not affect the right to relief when it appears that a jural relation is sought to be stabilized and substantial property rights are involved. (*New York Foreign Trade Zone Operators* v. *State Liq. Auth.,* 285 N. Y. 272, 277–278.) The scope of a departmental rule is also the proper subject of declaratory judgment. (*Socony-Vacuum Oil Co.* v. *City of New York,* 247 App. Div. 163, affd. 272 N. Y. 668; *Kirn* v. *Noyes,* 262 App. Div. 581.)

The availability of the administrative remedy of an appeal to the Board of Standards and Appeals does not preclude this action challenging the application of the statute and the rules to the facts of this case. (*Richfield Oil Corp.* v. *City of Syracuse, supra,* p. 239; *Dun & Bradstreet* v. *City of New York, supra,* pp. 206–207; *Matter of 109 Beach 29th St. Corp.* v. *Archer,* 188 Misc. 769, 771 [FROESSEL, J.]; *Sikora Realty Corp.* v. *Gillroy,* 37 Misc 2d 285 [CHRIST, J.]; cf. *Lesron Junior* v. *Feinberg,* 13 A D 2d 90.) In the last-cited case, the dissent (VALENTE, J.), in support of dismissal of the complaint in an action for an injunction, adverted to plaintiff's failure to exhaust its administrative remedies but, nevertheless, reaffirmed (pp. 98–100) the propriety of such an action when only questions of law are present. In the case at bar there are no disputed questions of fact; only questions of law are involved relative to the application of the statute and the rules. The expertise of the Board of Standards and Appeals is not involved and has no relevancy in the case at bar. The issue to be decided is clearly one of law, to wit, whether or not rule 2.5 applies to tenant-factory buildings more than five stories in height.

We find on this record and on the undisputed facts that the Factory Exit Rules of the Board of Standards and Appeals adopted February 23, 1947 and revised December 21, 1954 to effectuate the provisions of sections 270 and 271 of the Labor Law are inapplicable to plaintiff's said premises, and that the violation of July, 1951 and the orders thereon made are not in accordance with the statute and said rules.

The order and judgment should be reversed, on the law, with costs to plaintiff-appellant, and plaintiff's motion for summary judgment granted.

VALENTE, J. (dissenting). The question in this case of primary concern is whether the Supreme Court should, in the first instance, pass upon the efficacy of a Department of Housing and

Buildings' violation filed against plaintiff's premises or whether plaintiff should be relegated to the remedy of appeal to the Board of Standards and Appeals (hereinafter "Board"). In reaching a conclusion, we must bear in mind that the significant issue which plaintiff poses for determination in the instant action involves the applicability and interpretation of the rules of the Board.

The implications of the ruling of the majority of this court are vast and grave. In 1951, the Commissioner of Housing and Buildings and the Borough Superintendent of Manhattan issued to plaintiff a notice of violation charging an infraction of sections 267 and 272 of the Labor Law. The specification was that on various floors of two 10-story tenant factory buildings, owned by plaintiff, the areas on both sides of horizontal exits — through which one may go from one building to the other — were not occupied by the same tenant.* Similar notices and orders were issued in 1954, 1957 and 1959.

In 1959, plaintiff was convicted for failure to comply with violation and order. The conviction was affirmed (*People* v. *Namro Holding Corp.*, 10 A D 2d 702, affd. 8 N Y 2d 1131). In affirming, a majority of this court said: "The propriety of the Notice of Violation may not be collaterally reviewed in the criminal prosecution for its disobedience (*People* v. *Gillman*, 6 A D 2d 899). Adequate review by the Board of Standards and Appeals on that score could have been obtained under subdivision 6 of section 666 of the New York City Charter". Now, 11 years after the issuance of the first violation and order, and after a conviction has been affirmed for failure to comply, the majority of this court would declare that the rules of the Board claimed to have been infringed, are inapplicable to plaintiff's premises, and that the violations and orders are void.

The complaint herein was properly dismissed by Special Term because plaintiff failed to exhaust the available administrative remedy by appeal to the Board — a course specifically alluded to in our decision in *People* v. *Namro Holding Corp.* (*supra*) — before commencing this action for a declaratory judgment.

In *Lesron Junior* v. *Feinberg* (13 A D 2d 90) this court discussed the question of the failure to exhaust the administrative remedy of appeal to the Board in an action to enjoin the erection of a building on the ground that the new building would violate the height restrictions of the Zoning Resolution of the City of New York. By a sharply divided court it was there held that

---

* A different tenant on each side would increase the likelihood that a horizontal exit would be locked, and thereby add to the hazards in case of a fire.

plaintiff could maintain its action because it "could not obtain adequate and complete relief in the prosecution of an appeal to the Board of Standards and Appeals" (p. 94). Two Justices dissented and would have relegated the plaintiff to the remedy of appeal to the Board.

The considerations which impelled a majority of this court to sustain the complaint in *Lesron* are absent in the instant case. Plaintiff herein can obtain complete relief from the Board if it is entitled to it. Moreover, since the crux of plaintiff's case is the claimed inapplicability of the Factory Exit Rules of the Board, what more appropriate tribunal exists to clarify the scope and intent of those rules than the Board itself?

The intricate path through the statutory labyrinth taken by the majority opinion in reaching its conclusion is, in itself, an eloquent demonstration of the soundness of the rule requiring an exhaustion of the administrative remedies. It is readily apparent that we have here — as I wrote in *Lesron* (p. 100) — "a classic example of the necessity for review by experts rather than by a court". The majority would substitute the court for the expert body to which the New York City Charter (§ 666, subd. 6, par. [a]) gave exclusive jurisdiction to unravel the complicated problems that arise in the enforcement of the rules governing the use, occupancy and safety of buildings in New York City.

When one considers the extent of the number of violations and orders issued by the Department of Housing and Buildings in the course of a year, and the incidence of appeals to the Board of Standards and Appeals, it becomes evident what havoc the decision the majority announces will create in the field of the review of violations.[*] This decision opens the doors of the courts to a flood of litigation never intended to be heard in the first instance by courts but by the qualified experts on the Board. When questions are presented, such as in the instant case, which are particularly within the realm of the specialization of the Board, and when that Board can afford full relief, there is no compelling reason why the plaintiff should not be relegated to the administrative remedy of appeal to the Board.

I therefore dissent and would affirm the dismissal of the complaint.

---

[*] The Annual Report of the Department of Buildings of the City of New York for 1961 contains a table (Table No. 6, p. 40) of the number of violations filed annually by the Building Division for the years 1957–1961 as follows: 1957 — 25,574; 1958 — 23,794; 1959 — 24,135; 1960 — 23,436; 1961 — 24,855. All such violations, except the "Unsafe" category — which average about 800 each year — are appealable to the Board of Standards and Appeals.

BREITEL, J. P., and EAGER, J., concur with McNALLY, J.; VALENTE, J., dissents in opinion in which STEVENS, J., concurs.

Order and judgment (one paper) reversed, on the law, with costs to plaintiff-appellant, and plaintiff's motion for summary judgment granted, with $10 costs.