OPINION OF THE COURT
Stanley Gartenstein, J.
The court has conducted a joint single-Judge trial of two separate accusatory instruments involving a common set of facts and question of law. Upon a verdict of guilty as to both charges, the present corporate defendant was substituted without objection for the individual named defendant, an émployee thereof, and decision reserved after argument on the question of sentence.
*11 We now consider the issue of an apparently confiscatory penal statute whose validity is not under direct or collateral attack and its impact, if any, upon the ultimate disposition of these charges now sustained beyond a reasonable doubt.
Prior to a recitation of the undisputed facts, it is germane to note that the defendant has stipulated in open court that it challenges neither the constitutionality of the law itself, nor its validity on other grounds.
Defendant is a health club located at 143 Fulton Street, New York City which, because of the wide-sweeping language of moratorium aimed at the proliferation of massage parlors, now finds itself in violation of Building Department standards under circumstances whereby the means of compliance have been shut off by the municipality itself. The record contains a concession by the municipal authorities that no question is presented that defendant is exactly what it represents itself to be.
Defendant took over its present location in January, 1977, from a prior lessee, also a health club, which failed because of insufficient funds to complete a swimming pool. All work left undone by the prior lessee had been approved by the Department of Buildings and was completed by defendant at an expenditure in excess of $60,000. In May, 1977, five months after moving in, defendant applied for a building permit. On July 1, 1977, the department served a peremptory vacate notice on defendant on the grounds that egress was inadequate. This order was challenged and set aside by order of the Supreme Court in article 78 proceedings granted on the city’s default. An ad hoc agreement was immediately reached between opposing counsel wherein the city’s default in answering would be set aside in exchange for an informal commitment by the department to allow the egresses to be constructed. During the interim period, the club would remain closed voluntarily (despite the fact that the vacate order was now a legal nullity). The department pemitted this work to go forward and then brought on these prosecutions for completion of the work without approval. It is claimed and not disputed that in spite of the zoning moratorium, the department is empowered and/or has empowered itself to grant exceptions thereto and has in fact granted such exception to at least one midtown health and racquet club.
The leading case concerning enforcement of building regulations and the difficulties of reconciling traditional concepts of *12 due process with an apparent grant of selective interpretation and enforcement powers to an executive-branch commissioner is People v Namro Holding Corp. (10 AD2d 702, affd 8 NY2d 1131) and its companion, Namro Holding Corp. v City of New York (31 Misc 2d 480, revd 17 AD2d 431, affd 14 NY2d 693). A study of both cases on each level of adjudication is appropriate. Even more interesting are the dissenting opinions and the unsettling of the principles established in the first case by the ultimate result in the second one.
The first Namro case involved a prosecution for disobedience of a violation notice served by the city’s Department of Buildings. The defendant was tried by a three-Judge Bench in the Court of Special Sessions and found guilty despite its vigorous challenge to the validity of the violation notice. On appeal to the Appellate Division, First Department, the conviction was sustained (10 AD2d 702, supra) on the basis that "[t]he propriety of the Notice of Violation may not be collaterally reviewed in the criminal prosecution for its disobedience.” The Appellate Division pointed out (p 702) that "defendant disobeyed its directions and did not follow the proper procedure by appeal to test its efficacy.” Finally, the court pointed out (p 702) the provisions of section 643a-9.0 of the Adiministrative Code of the City of New York "under which the failure to comply with an order of the Commissioner of Buildings is a misdemeanor.” In a vigorous dissent, (then) Associate Justice Breitel stated (p 703): "Nor do I understand [the cases cited by the majority] to reach so far as to give an administrative officer power to create a misdemeanor by an unintelligible regulation. And this, merely because he orders compliance with his own direction, the validity of which is carefully screened from all but himself and his assistants * * * It is patently unconstitutional on elementary principles of illegal delegation of legislative power, violation of substantive due process, and the vagueness of statutes imposing criminal liability.”
On appeal, the Appellate Division was sustained, again by a divided court (8 NY2d 1131, supra).
Thereafter Namro commenced an action in the Supreme Court, County of New York, for a declaratory judgment seeking to overturn the practical effect of the conviction, sustained through the Court of Appeals. The Supreme Court denied plaintiff’s motion for summary judgment and dismissed the complaint (31 Misc 2d 480, supra). On appeal to the Appellate *13 Division, First Department, the order of the Supreme Court was reversed with a clear statement (p 434) that: "We conclude the said violation is without the support of any Taw, rule or regulation’ The majority further held (p 435) that: "The fact that a declaratory judgment may serve to preclude a criminal prosecution does not affect the right to relief when it appears that a jural relation is sought to be stabilized and substantial property rights are involved.” (Citations omitted.)
The vigorous dissent of Associate Justice Valente pointed out that the majority’s ruling in effect nullified the entire course of prior litigation wherein the original prosecution had been sustained through the Court of Appeals (p 436): "Now, 11 years after the issuance of the first violation and order, and after a conviction has been affirmed for failure to comply, the majority of this court would declare that the rules of the Board claimed to have been infringed, are inapplicable to plaintiff’s premises, and that the violations and orders are void.”
In spite of the dissent which pointed out that the first line of Namro cases was being canceled out by the current holding, the Court of Appeals unanimously affirmed the Appellate Division (14 NY2d 693, supra). Thus, while the original Namro holding has never been specifically reversed, its ultimate effect has been diluted to an extent apparently undefined as yet.
Returning to the case at bar, it is apparent that the same instrumentality which now prosecutes is responsible, by its own informal agreement, for the violation it complains of. While the doctrine of estoppel does not operate against the State or a subdivision thereof, its good faith in prosecuting is certainly relevant. Moreover, when one arm of this municipality declares certain conditions to be in violation while at the same time it closes off the avenue of removing this violation, it has created an impossible burden tantamount to a confiscatory deprivation of property.
Assuming, arguendo, that the first line of Namro cases must be followed even without reference to the diluting effect of the subsequent line, the technical verdict of guilty, rendered on the face validity of the first Namro cases does not preclude a consideration of the interests of justice as a ground for dismissal pursuant to CPL 170.30 and 170.40. We find no impediment to these considerations on the court’s own motion (CPL 170.40, subd 2), nor in the fact that the trial has been held and a verdict rendered. The only limitation by way of time or *14 by virtue of the particular stage of any proceeding as regards a motion to dismiss is contained in CPL 170.30 (subd 2) and has reference only to the speedy trial rule.
We hold it counter-productive to the orderly administration of justice to have the stigma of an adjudication of guilt and its attendant cloud on title stand in the face of the overpowering equities in favor of defendant.
The convictions are vacated and proceedings dismissed in the interests of justice pursuant to CPL 170.40.