OPINION OF THE COURT
David B. Saxe, J.
I am asked here to determine whether a lease clause purporting to require a tenant to pay his monthly rent (or maintenance fee, as the case may be) through an Electronic Funds Transfer System (EFTS) at a participating bank is valid. Also, at issue is the validity of a $50 per month charge imposed by resolution of the co-operative’s board of directors upon tenant shareholders who choose not to join the preauthorized draft system.
The proprietary lessor-landlord, Lenox Manor, Inc., commenced this nonpayment proceeding against the respondent, Robert Gianni, the co-operator of apartment 8H located at 176 East 77th Street, New York, New York. It is stated that Mr. Gianni did not properly remit his maintenance fees for the months of May and June of 1983.
The proprietary lease states in pertinent part: “To facilitate payment of the rent, Lessee shall become a member of a pre-authorized draft system with a recognized national bank approved by Lessor, pursuant to which the bank each month will automatically debit Lessee’s checking account *203 for the monthly rent then due (paying it directly to Lessor, or, at Lessor’s election, to the building’s then managing agent).”
Mr. Gianni tendered payment of his maintenance fees by check to the lessor but it was refused because it did not comply with the provision of the proprietary lease quoted above.
Mr. Gianni, a former banker, objects to the imposition of a preauthorized draft system. He maintains that it is unduly restrictive, that it portends possible violation of his privacy rights, that the system is not “fool-proof” and that it interferes with his budgeting of funds in various accounts so that this account would have the requisite funds available on the fifth day of each month.
Preauthorized draft systems are often imposed by cooperatives and condominium boards for financial reasons. The automatic transfer system is one way of reducing the cost of billing out monthly statements for common and maintenance charges. Under the system adopted by this co-op board, the building would have access to the money no later than the fifth day of each month. Bookkeeping expenses are saved and the co-op has additional time to invest the funds on behalf of the building. Check writing is, of course, eliminated and the system provides complete monthly receipts.
The public offering of this apartment for sale as a cooperative included the provision that payment of maintenance fees was to be made through a preauthorized draft system.
Mr. Gianni is bound by the provisions contained in the proprietary lease between him and the co-operative. (21 NY Jur 2d, Contracts, § 1; Rasch, NY Landlord & Tenant, §1.)
On the court’s own motion, an examination was made of the Federal Electronic Fund Transfer Act. (US Code, tit 15, § 1698.)
Its stated purpose is to provide “a basic framework establishing the rights, liabilities and responsibilities of participants in electronic fund transfer systems [and] provision of individual consumer rights.” (US Code, tit 15, § 1693, subd [b].)
*204 One concern that the act addresses is the preservation of the consumer’s freedom of choice between EFT and other payment methods, particularly the check, and the ability of consumers to choose between different kinds of EFT services. (Penney and Baker, Law of Electronic Fund Transfer Systems, par 13.03.)
Section 1693k of the Electronic Fund Transfer Act specifically deals with the issue of compulsory use of electronic funds transfers. The section states: “No person may — (1) condition the extension of credit to a consumer on such consumer’s repayment by means of preauthorized electronic fund transfers; or (2) require a consumer to establish an account for receipt of electronic fund transfers with a particular financial institution as a condition of employment or receipt of a government benefit.”
Although subdivision (2) of section 1693k prohibits an employer or the government from forcing a consumer to deposit the credits to a particular financial institution, the act seems to allow them to insist that a consumer receive electronic payments through some financial institution.
Thus, while the act allows an employer or the government to mandate that a consumer receive electronic payments (i.e., automatic credit), it does not address the issue of whether an individual can contractually mandate a consumer to make electronic payments (i.e., automatic debits), the situation in controversy here.
In Park Knoll Assoc. v New York State Div. of Housing & Community Renewal (Supreme Ct, Westchester County, Sept. 26, 1978), a preauthorized draft system similarly imposed upon tenants was upheld.
Since basic contract law holds that an individual has a duty to read a contract and is responsible for the provisions contained in it (21 NY Jur 2d, Contracts, § 51) and there being no discernible legislative or common-law prohibition to this system, I would be inclined to hold in a summary holdover proceeding, based upon breach of a lease term, that its breach by Mr. Gianni would constitute a default under the terms of the proprietary lease.
But, what must be kept in mind here, however, is that this proceeding is one for the nonpayment of rent and not a *205 holdover based upon termination of a leasehold. As a nonpayment proceeding, the tenant can, at any time prior to the issuance of the warrant, stay the issuance of the warrant by paying to the clerk of the court the full amount of rent due plus the statutory costs. (RPAPL 751, subd 1.) That right may be effectuated without the use of a preauthorized electronic draft system. Instead, it merely requires the payment of money. In fact, a judgment for the two months of maintenance plus costs could obviously be paid by cash or check. Thus, the landlord has no basis to object if the tenant attempts to satisfy a judgment herein, as a result of this nonpayment summary proceeding, by tendering a check in the proper amount owing.
There is indeed much to fear from a completely electronic banking system that can track a consumer’s purchases, deposits and withdrawals and that may result in improper retrieval of private information. (See, generally, Saxe & Pariser, “There Once Was Money, Wasn’t There?”, New York Times, Aug. 1,1975, p 15.) But that seems not to be a problem here. All that the tenant is required to do is to maintain a sufficient balance in the preauthorized draft account each month in order to cover the debit for maintenance. Of course, even after judgment in a holdover proceeding, the shareholder would be entitled to 10 days to cure — to implement the preauthorized draft system. (RPAPL 753, subd 4.)
The $50 per month charge was authorized by a board of directors resolution obviously to buttress the importance of the preauthorized draft system. The resolution provides that a $50 charge may be imposed monthly against all tenant shareholders who do not join the preauthorized draft system within 30 days after notice by the managing agent.
If a rule bears a relationship to the legitimate purpose of the co-operative or condominium, the board’s discretion in promulgating the rule will ordinarily not be deemed arbitrary and capricious and will be upheld (see, generally, Garrison Apts. v Sabourin, 113 Misc 2d 674). However, the petitioner failed to prove that this $50 charge is properly includable as maintenance (“co-op rent”) and I therefore hold that it cannot be recovered in a summary proceeding.
*206 The clerk is directed to enter judgment in the landlord’s favor in an amount representing the maintenance fee for May and June of 1983. No costs or disbursements shall be allowed. The landlord is directed to accept Mr. Gianni’s tender of his check in the above amount, if tendered within 10 days of entry, in satisfaction of this judgment.