Lillian Schoninger, Respondent, v Yardarm Beach Home-owners' Association, Inc. et al., Appellants.

Second Department, December 28, 1987

APPEARANCES OF COUNSEL

*Szold & Brandwen, P. C. (Alan G. Blumberg* and *Paul J. Sleven* of counsel), for appellants.

*Stewart I. Rosenblum* for respondent.

**OPINION OF THE COURT**

BROWN, J.

■ On this appeal, we are asked to decide, *inter alia,* whether the corporate business judgment rule should be applied to insulate the good-faith action of the board of managers of an unincorporated condominium from judicial review. We conclude that the rule should be so applied.

The plaintiff is the owner of a condominium unit located in the Yardarm Beach Condominium I in the Village of Westhampton Beach (hereinafter Yardarm) and has commenced this

action for injunctive relief against the members of the board of managers of the condominium (hereinafter the board), both individually and as members of the board, and the Yardarm Beach Homeowners' Association, Inc. (hereinafter the Association), a corporation which owns the common facilities shared by the condominium unit owners of Yardarm and its nearby affiliated condominiums, Yardarm Beach Condominium II and Yardarm Beach Condominium III. This litigation is the latest in a series of actions and proceedings initiated by the plaintiff against certain of the present defendants and others connected with the ownership and management of Yardarm or having administrative responsibilities over its operation, charging them, *inter alia,* with fraud, violations of building codes and failure to remedy various unsafe conditions on the premises.

In the instant action, the plaintiff seeks an affirmative injunction compelling the defendants to "do those things necessary to collect, use and expend assessments to maintain, care for and preserve the homes, buildings and other common elements and to make such repairs as are necessary and required." In her complaint, the plaintiff alleges that, beginning in January 1979 she informed both the board and the Association that various of the common properties of the condominium had been improperly designed and constructed and were being improperly maintained. She states that she both initiated litigation and presented to the defendants architectural and engineering reports indicating the specific defects. She charged that the board had "wholly neglected its duties with regard to the maintenance and preservation of the common properties" and, in addition, asserts that there were several outstanding violations issued by the local building inspector charging that the condominium's stairways were in an unsafe condition and that the situation had gone uncorrected for over a year. The complaint also charged that the exterior and structural steel was rapidly deteriorating and corroding, posing a threat to the integrity of the building, and that the condition, despite its having been brought to the attention of the board, had remained untreated, that the siding material on the building had not been properly treated so as to be flame retardant and the board had taken no measures to correct the condition, and that the entire building was constructed in a manner which impeded access for fire-fighting activities.

On or about April 20, 1983, the defendants served an

amended answer denying the principal allegations of the complaint, asserting various affirmative defenses, including res judicata and unclean hands, and interposing two counterclaims against the plaintiff, the first for past-due amounts owed to both the board and the Association, and the second for legal fees incurred in connection with the recovery of those amounts.

The plaintiff thereupon moved to dismiss the affirmative defenses of res judicata and unclean hands and, in response, the defendants cross-moved for summary judgment on the ground of res judicata based on the determinations in three prior lawsuits and two administrative proceedings.

By order dated January 6, 1984, the Supreme Court, Suffolk County (Jones, J.), denied the plaintiff's motion and granted the defendants' cross motion to the extent of striking certain allegations contained in the complaint on the ground that they had been raised and ruled upon in prior litigation. The court held, however, that while certain of the allegations had been litigated previously, the basis of the action, i.e., to require certain upkeep, maintenance and repair of the condominium, did not arise solely out of facts previously litigated. Thus, it declined to dismiss the action.

In March 1985, the defendants once more moved for summary judgment, arguing that the sole remaining allegations of the complaint concerned alleged violations of the local building ordinance and the failure to take corrective measures to halt the deterioration and corrosion of the exterior and structural steel, which had since been remedied. Referring to a letter from the Village Attorney for the Village of Westhampton Beach, the defendants pointed out that the violations had been corrected in 1982 and that there were currently no outstanding violations. With respect to their alleged failure to take measures to correct the deterioration and corrosion of the exterior and structural steel, the defendants pointed out that that problem had been given constant attention and preventative maintenance and repairs made from 1978 through 1982, and when the problems persisted, they had been remedied as part of a comprehensive $1,000,000 repair and rehabilitation program undertaken in 1984. Therefore, the defendants argued, since the complaint sought an injunction ordering them to remedy certain alleged unsafe conditions and those conditions had already been remedied, the complaint should be dismissed as moot. In addition, the defendants argued that the authority and responsibility for man-

agement of the property of the condominium was delegated under the condominium's bylaws to the board and that its decisions made in the exercise of its business judgment were not subject to judicial scrutiny. The defendants also sought summary judgment on their counterclaims.

In response, the plaintiff conceded that the repair work on the exterior and structural steel had been performed, but criticized the quality and manner in which that work had been performed and asserted that the existence of factual issues as to whether the work had been performed in a reasonable manner precluded the granting of summary judgment. The plaintiff submitted an affidavit of an architect retained by her as an expert, who leveled certain criticisms at the manner in which the repair and rehabilitation of the steel had been carried out.

The defendants countered, *inter alia,* with affidavits from both the project director of the engineering firm and superintendent of the contractor which had carried out the repair program, attesting to the soundness of the work which had been performed.

In the order appealed from dated October 7, 1985, the Supreme Court (Cannavo, J.), denied that branch of the defendants' motion which was for summary judgment dismissing the complaint on the ground of mootness, stating: "Material issues of fact with regard to the scope, nature, quality and sufficiency of defendants' remedial action are reflected in the conflicting affidavits submitted by the parties' experts, and as to whether the actions engaged in by defendants were and are effective, reasonable, or were contributing factors increasing the extent of damages, costs, repairs and assessments, requiring trial". The court also denied that branch of the defendants' motion which was for summary judgment on their counterclaim for legal fees, concluding that whether or not the plaintiff was accountable and should be assessed legal fees was contingent upon the resolution of the issues raised in the complaint "pertaining to necessity and adequacy of the repairs and the scope of the special assessment". The court did, however, grant that branch of the defendants' motion which was for summary judgment on their first counterclaim for past-due charges, but deferred its determination as to the amounts due to the trial. This appeal ensued.

The condominium form of ownership of real property may be described as a division of a parcel of real property into

individual units and common elements in which an owner holds title in fee to his individual unit as well as retaining an undivided interest in the common elements of the parcel *(see, Kaufman & Broad Homes v Albertson,* 73 Misc 2d 84; *Susskind v 1136 Tenants Corp.,* 43 Misc 2d 588; 15A Am Jur 2d, Condominiums and Co-operative Apartments, § 1; 19 NY Jur 2d, Condominiums and Co-operative Apartments, § 9). In New York the creation and administration of condominiums is governed by the provisions of Real Property Law article 9-B (§ 339-d *et seq.).* A parcel of real property becomes a condominium and thus is subject to the jurisdiction of the Condominium Act (Real Property Law § 339-f) by the filing of a declaration (Real Property Law § 339-n). Once created, however, the administration of the condominium's affairs is governed principally by its bylaws, which are, in essence, an agreement among all of the individual unit owners as to the manner in which the condominium will operate, and which set forth the respective rights and obligations of unit owners, both with respect to their own units and the condominium's common elements.

Because of the manner in which ownership in a condominium is structured, the individual unit owner, in choosing to purchase the unit, must give up certain of the rights and privileges which traditionally attend fee ownership of real property and agree to subordinate them to the group's interest. As one court has commented, "to promote the health, happiness, and peace of mind of the majority of the unit owners * * * each unit owner must give up a certain degree of freedom of choice which he might otherwise enjoy in separate, privately owned property" *(Hidden Harbour Estates v Norman,* 309 So 2d 180, 182 [Fla]; *see also, Ryan v Baptiste,* 565 SW2d 196 [Mo]). The basic agreement among the unit owners as to the manner in which the condominium shall be administered and maintained is set forth in the condominium's bylaws (Real Property Law § 339-v). Under the Condominium Act, there are a number of mandatory items which the bylaws of a condominium must contain, including provisions for the nomination and election of a board of managers to serve as the principal agents of the condominium and a statement of the powers and duties of that board (Real Property Law § 339-v [1] [a]).

Since the bylaws are the vehicle by which unit owners forego certain individual property rights and delegate them to a board of managers, it is important that the bylaws clearly

spell out the limits of the board's authority to act. One area in which the board of managers is generally given broad authority to act is in the area of collecting and disbursing funds to provide for maintenance and repair of the common elements of the condominium. In the case at bar, for example, the bylaws of Yardarm specifically delegates to the board broad responsibility for all maintenance, repairs and replacement of the common elements and empowers them "[t]o collect, use and expend the assessments collected to maintain, care for and preserve the Homes, Buildings and other common elements" *(see,* Bylaws of Yardarm Beach Condominium, art III, § 5 [a] [2]). The delegation of authority to the board of managers to spend money for repairs without unit owner approval is obviously one which can lead to conflict and where not clearly spelled out or limited to a specific dollar amount, can result in litigation *(see,* Note, *Promulgation and Enforcement of House Rules* 48 St. John's L Rev 1132, 1143 [1974]).

That brings us to the major issue in this case, i.e., to what extent should courts intervene in disputes between individual unit owners and the board of managers of a condominium over actions taken by the latter with regard to repair decisions. The standard often applied in actions of this nature to review resolutions of a board of managers is a loosely defined standard of reasonableness. It has been suggested that review under this reasonableness standard falls into two categories (Note, *Judicial Review of Condominium Rulemaking,* 94 Harv L Rev 647, 658-667 [1981]). The first is analogous to review of the rule-making powers of administrative agencies and looks to see if the board of managers was authorized to act and then whether, in acting, it acted in an arbitrary and capricious manner, unrelated to the purposes of the condominium *(see, Hidden Harbour Estates v Norman, supra; Ryan v Baptiste, supra).* The second category analogizes condominiums to corporations, and would apply the same business judgment rule to review the actions of a condominium board of managers as is applied in a shareholders' derivative action to review the actions of corporate directors *(see, Papalexiou v Tower W. Condominium,* 167 NJ Super 516, 401 A2d 280; *Rywalt v Writer Corp.,* 34 Colo App 334, 526 P2d 316).

A number of cases in New York have applied a reasonableness standard in reviewing the rule-making powers of a board of managers to enact rules which place restrictions upon the activities or otherwise dictate the conduct of unit owners. The analysis used in these cases would seem to fall into the first

category. In *Amoruso v Board of Managers* (38 AD2d 845), for example, this court rejected an attempt by individual unit owners to enjoin construction of a $500 basketball court which had been authorized by the condominium's board of managers. The court reasoned that the bylaw pursuant to which the board acted, which authorized the board of managers to make additions and improvements costing less than $5,000 without the approval of the unit owners, was not in violation of Real Property Law § 339-v (2) (b) which specifically authorizes the inclusion in bylaws of "[p]rovisions governing the payment, collection and disbursement of funds * * * to provide for * * * additions, improvements * * * and similar purposes". Therefore, the court concluded the action was reasonable and taken pursuant to a lawful bylaw. The court also stated that a bylaw is not rendered facially invalid merely because it may, in certain circumstances, be exercised arbitrarily or capriciously or in such a way as to violate other provisions of law.

Similarly, in *Board of Managers v Cohn* (90 Misc 2d 1054), where the challenge was made to a board of managers resolution to not renew one of a unit owner's two vehicle parking space leases, the court upheld the action simply by relying upon the board's power under the bylaw to make reasonable rules and regulations without specifically articulating this as a standard of review.

The reasonableness test was also applied in *Lenox Manor v Gianni* (120 Misc 2d 202) and *Garrison Apts. v Sabourin* (113 Misc 2d 674), two cases involving apartment cooperatives. There the courts held that if a rule bears a relationship to the legitimate purpose of the cooperative or condominium, the exercise of the board's discretion in promulgating the rule will ordinarily not be deemed arbitrary and capricious and will be upheld.

These cases, however, dealt with the powers of the board of managers in relation to creating rules and regulations governing the everyday conduct of the affairs of the condominium. At bar, no challenge is made to the board's authority to act or to expend resources for the repair of the common elements of the condominium. Nor is any challenge made to the reasonableness of the board's decision which bears a legitimate relationship to the purposes of the condominium, i.e., to ensure the continued integrity of the physical structure. What is being challenged here is a decision by the board to pursue one program of repair and rehabilitation—which has been completed since the commencement of this action—rather

than another program of repair work suggested by the plaintiff and her experts. Upon such circumstances, the application of a loosely defined reasonableness standard of review is not appropriate. Rather, the circumstances call for application of the business judgment rule, which acts as a restraint on judicial interference into the corporate decision-making process.

As stated in *Auerbach v Bennett* (47 NY2d 619), the business judgment rule: "bars judicial inquiry into actions of corporate directors taken in good faith and in the exercise of honest judgment in the lawful and legitimate furtherance of corporate purposes. 'Questions of policy of management, expediency of contracts or action, adequacy of consideration, lawful appropriation of corporate funds to advance corporate interests, are left solely to their honest and unselfish decision, for their powers therein are without limitation and free from restraint, and the exercise of them for the common and general interests of the corporation may not be questioned, although the results show that what they did was unwise or inexpedient' *(Pollitz v Wabash R. R. Co.,* 207 NY 113, 124)" *(Auerbach v Bennett, supra,* at 629). Under the business judgment rule, the court's inquiry is limited to whether the board acted within the scope of its authority under the bylaws (a necessary threshold inquiry) and whether the action was taken in good faith to further a legitimate interest of the condominium. Absent a showing of fraud, self-dealing or unconscionability, the court's inquiry is so limited and it will not inquire as to the wisdom or soundness of the business decision *(see, Fe Bland v Two Trees Mgt. Co.,* 66 NY2d 556, 565; *Matter of Boisson v 4 E. Hous. Corp.,* 129 AD2d 523; *Bernheim v 136 E. 64th St. Corp.,* 128 AD2d 434).

Courts in several other jurisdictions have applied the business judgment rule to judicial review of actions by condominium boards of managers *(see, Thanasoulis v Winston Tower 200 Assn.,* 214 NJ Super 408, 519 A2d 911; *Papalexiou v Tower W. Condominium,* 167 NJ Super 516, 401 A2d 280, *supra; Schwarzmann v Association of Apt. Owners,* 33 Wash App 397, 655 P2d 1177; *Rywalt v Writer Corp.,* 34 Colo App 334, 526 P2d 316, *supra)* and we find their reasoning to be sound. Moreover, in 1974 the Legislature amended the Condominium Act to permit the incorporation of the board of managers of a condominium (Real Property Law § 339-v [1] [a], as amended by L 1974, ch 1056, § 6). Thus, in those cases where the board of managers has chosen to incorporate, the

business judgment rule would, of course, be applicable. We can see no sound reason to adopt a differing standard of review in cases such as the one at bar, where the actions to be reviewed are those of an unincorporated as opposed to an incorporated board of managers. In either situation, that body is carrying out the same task of administering and managing the day-to-day affairs of the condominium, and its ability to make the necessary business judgments essential to that task, whether wisely or unwisely performed, should not be subject to undue examination by the courts into the reasonableness of its decisions.

Thus, we hold that where a challenge is made by an individual owner to an action of a condominium board of managers, whether incorporated or not, absent claims of fraud, self-dealing, unconscionability or other misconduct, the court should apply the business judgment rule and should limit its inquiry to whether the action was authorized and whether it was taken in good faith and in furtherance of the legitimate interests of the condominium.

The record in this case demonstrates that the board, which had a repair plan developed by a qualified engineering company, had that plan approved by another qualified engineer retained by the Village of Westhampton Beach, and had the work under the plan performed by a qualified contractor, took action demonstrably in good faith and honest judgment. The action taken was lawful and the record contains no evidence that any of the repair work resulted in violations of building or fire codes. Accordingly, under the business judgment doctrine, there being no claim of fraud, self-dealing, unconscionability or other misconduct, the court's review of the matter is complete, summary judgment should be awarded to the defendants, and the plaintiff's cause of action dismissed.

■ While Special Term awarded the defendants summary judgment on their first counterclaim for common charges and assessments, it held that a trial was required as to the amount due thereon. We conclude that no trial is required. The plaintiff contends that the defendants asked for a lesser amount in their counterclaim than they demanded in their motion, and that the quality of the repairs may be used by her to offset part of the charges she owes the defendants. The defendants' motion, however, included a demand for the sums which have become due since service of the counterclaim, the plaintiff does not deny the accuracy of the amounts claimed by the defendants, and a review of the operative documents

demonstrates that the interest now demanded by the defendants is, in fact, due them. Moreover, in light of our decision regarding the plaintiff's complaint, there is no basis for any offset based upon the quality of the repairs. Since the reason for Special Term's deferring the entry of judgment on that counterclaim until the resolution of the other claims was the uncertainty of the amount due to the defendants, that provision of the order appealed from should be stricken, and the matter remitted to the Supreme Court, Suffolk County, for the entry of an appropriate judgment with respect to that counterclaim. Finally, as the bylaws of the condominium and the Association both authorize the recovery of reasonable legal fees in connection with the recovery of past-due fees, the defendants are entitled to summary judgment as to liability on their second counterclaim as well. Upon remittitur, the Supreme Court, Suffolk County, should conduct a hearing as to the amount of those fees.

Accordingly, the order dated October 7, 1985, should be reversed insofar as appealed from, with costs, those branches of the defendants' motion which were for summary judgment dismissing the complaint and for summary judgment as to liability on their second counterclaim should be granted, the defendants' first counterclaim should be severed, and the matter should be remitted to the Supreme Court, Suffolk County, for entry of an appropriate judgment on the defendants' first counterclaim and a hearing on the amount of counsel fees to be awarded on their second counterclaim.

MANGANO, J. P., BRACKEN and EIBER, JJ., concur.

Ordered that the order is reversed insofar as appealed from, on the law, with costs, those branches of the defendants' motion which were for summary judgment dismissing the complaint and as to liability on their second counterclaim are granted, and the matter is remitted to the Supreme Court, Suffolk County, for entry of an appropriate judgment on the defendants' first counterclaim and a hearing on the amount of counsel fees to be awarded on their second counterclaim.