OPINION OF THE COURT
David B. Saxe, J.
This action focuses attention on a classic confrontation in *406 the New York City condominium/co-op world — between those who purchase units for investment and those who purchase for their own residence.
The Murray Hill Terrace Condominium (the condominium) consists of 118 residential apartments and one ground-floor commercial unit. Plaintiff, Silvana Caruso, is the fee title owner of condominium unit 4-E, although she does not actually reside there. She commenced this action seeking declaratory and injunctive relief and incidental monetary damages with respect to the promulgation and enforcement of certain purported regulations, and she now moves for a preliminary injunction enjoining defendant, the board of managers of Murray Hill Terrace Condominium (the Board), from enforcing one regulation denying access to condominium units unless the unit owner is present, and another charging and collecting a $400 "move-in/move-out” fee. Defendant cross-moves for an order dismissing the complaint on the ground of lack of personal jurisdiction.
The first purported regulation which is the subject of this action is contained in a newsletter dated July 25, 1988, which was sent to plaintiff at her home by regular mail. It provides as follows:
"showing of apartments by brokers
"If you plan to show your apartment to prospective tenants or buyers, please keep the following policy in mind when setting up appointments. Before 9 a.m. and after 5 p.m. on weekdays, and all days on weekends and holidays, unit owners must be at home to receive visitors. Because of staff limitations, brokers are not permitted to show apartments during these times if the unit owner is not at home. Between 9 and 5 on weekdays, brokers may show apartments in the absence of the unit owner only if the unit owner leaves a key and a written note authorizing a particular broker to have access to the apartment. We hope that you understand that this policy is necessary to maintain a secure building.”
Plaintiff states that she sought to rent her unit and, toward that end, listed it with a broker, Manhattan Apartments, Inc., on or about June 15, 1988 (i.e., approximately one month before her receipt of the newsletter). She left an authorization to admit the broker and a key to her unit with the superintendent of the condominium. On or about July 22, 1988, at approximately 6:15 p.m., the broker retained by plaintiff was *407 allegedly refused admission to her unit. She further alleges that on a number of occasions subsequent to July 22, 1988, the broker again attempted to show plaintiffs apartment to prospective tenants after 5:00 p.m. but was refused admittance.
Plaintiff contends that the purported regulation governing the showing of apartments by brokers is null and void because it was not promulgated in accordance with the recorded declaration of condominium (the Declaration) which was filed on January 21, 1985, or the bylaws, or in accordance with the New York Condominium Act (Real Property Law, art 9-B, §§ 339-u, 339-v). She now seeks a preliminary injunction enjoining its enforcement during the pendency of this action.
A party seeking the drastic provisional remedy of a preliminary injunction is required to demonstrate: (1) a likelihood of ultimate success on the merits; (2) irreparable injury absent the granting of the preliminary injunction; and (3) that a balancing of the equities lies in favor of the movant’s position (Gambar Enters. v Kelly Servs., 69 AD2d 297, 306 [4th Dept 1979]; Albini v Solork Assocs., 37 AD2d 835 [2d Dept 1971]). In order to satisfy the first requirement of the three-pronged test, i.e., likelihood of success, the movant is required to show a clear right to the relief sought on the basis of the undisputed facts (Family Affair Haircutters v Detling, 110 AD2d 745 [2d Dept 1985]). Where important material facts are in sharp dispute, a preliminary injunction will not be granted (supra; Duro-Test Corp. v Donaghy, 9 AD2d 860 [4th Dept 1959]).
In this case plaintiff makes a strong argument that the purported regulation (the so-called "policy”) was not promulgated in accordance with the technical requirements of Real Property Law §§ 339-u and 339-v and of the bylaws. Real Property Law § 339-u provides as follows:
"§ 339-u. By-Laws
"The operation of the property shall be governed by by-laws, a true copy of which shall be annexed to the declaration. No modification of or amendment to the by-laws shall be valid unless set forth in an amendment to the declaration and such amendment is duly recorded. ” (Emphasis added.)
Real Property Law § 339-v provides, in pertinent part, as follows:
"§ 339-v. Contents of by-laws
"1. The by-laws shall provide for at least the following * * *
"(h) Method of adopting and of amending administrative *408 rules and regulations governing the details of the operation and use of the common elements.
"(i) Such restrictions on and requirements respecting the use and maintenance of the units and the use of the common elements, not set forth in the declaration, as are designed to prevent unreasonable interference with the use of their respective units and of the common elements by the several unit owners.
"(j) The percentage of the unit owners, but not less than sixty-six and two-thirds per cent in number and common interest except in the case where all units are non-residential, which may at any time modify or amend the by-laws.
"2. The by-laws may also provide for the following:
"(a) Provisions governing the alienation, conveyance, sale, leasing, purchase, ownership and occupancy of units * * *
"(d) Any other provisions, not inconsistent with the provisions of this article, relating to the operation of the property.” (Emphasis added.)
Neither the recorded Declaration nor the bylaws nor the rules and regulations recites the purported regulation (described as a "policy” in the newsletter) in haec verba. Article 12 of the bylaws tracks the statutory language and provides that they "may be amended, modified, added to or deleted by the affirmative vote of not less than 66-%% in number and aggregate Common interest of all Unit Owners either taken at a duly constituted meeting thereof’. According to the plaintiff, the minutes of the Board show no such meeting or vote. Moreover, article 11, § 11.1 of the bylaws requires that all notices be sent "by registered or certified mail, return receipt requested” to the unit owner "at his address at the Property”. Plaintiff asserts that she never received formal notice of any amendment of the bylaws and that the only notification she received of the purported regulation governing the showing of apartments by brokers was in the newsletter, which was sent by ordinary mail. Clearly, the "policy” was not enacted by proper amendment of the bylaws.
However, the court must liberally construe the provisions of the Condominium Act in order to effect its intended purpose (Real Property Law § 339-ii). Towards this end, not every technical failure of the Board to strictly follow the procedures for amending the bylaws necessarily requires the court to invalidate such action by the Board (Board of Managers v Gans, 72 Misc 2d 726, 728 [Civ Ct, Queens County 1972]; in *409 another context, see, Matter of New York Univ. v Whalen, 46 NY2d 734 [1978]).
Moreover, in the defendant’s opposition to the motion, the president of the Board states that the challenged rule or policy has been in effect since the inception of the condominium, has been published in a number of newsletters and has been consistently enforced. He explains that the purpose of the rule is "to protect the safety and security of the residents of the building, and represents a deliberate judgment on [sic] the Board of Managers to give higher priority to the safety and security of residents of the building than to the financial interests of the speculators owning apartments for purposes of profit-making.” He argues that several sections of the bylaws authorize the Board to promulgate such a policy. Section 2.4 authorizes the Board to operate and maintain the common elements "as the condominium Board shall deem necessary or proper,” and to "adopt and amend the Rules and Regulations.” He construes section 5.6 as authorizing the Board to regulate the use of the property to prevent nuisances, annoyances, or any interference with the peaceful possession or proper use by any of the residents. Finally, section 5.10 of the bylaws gives the Board "the right to amend, modify, add to or delete any of the Rules and Regulations from time to time”.
Thus, the bylaws permit the Board to adopt certain types of regulations and possibly less formal policies covering specific topics. Review of the exercise by a Board of its rule-making authority calls into play the "business judgment rule” (see, Schoninger v Yardarm Beach Homeowners’ Assn., 134 AD2d 1, 10 [2d Dept 1987]). Under this rule, absent claims of fraud, self-dealing, unconscionability, or other misconduct, the court must limit its inquiry to (1) whether the Board’s action was authorized, and (2) whether the action was taken in good faith and in furtherance of the condominimum’s interests (see, Gillman v Pebble Cove Home Owners Assn., 154 AD2d 508 [2d Dept]). Here, there can be little question that the action was taken in good faith and in the interests of the condominium as a whole. The challenged rule merely evinces legitimate concern for the safety and security interest of unit owners residing in the building.
Inasmuch as there is some merit to the defendant’s position that its promulgation of the policy or regulation was in accordance with the law and the condominium’s bylaws, the movant has not established the requisite clear likelihood of success on the merits.
*410 Nor has plaintiff demonstrated that she will suffer irreparable injury if injunctive relief is denied. To the extent that plaintiff contests the policy governing the showing of apartments by brokers, presumably she could be made whole by an award of money damages measured by the loss of rental income (Multi Media Entertainment v National Telefilm Assocs., 58 AD2d 785 [1st Dept 1977]). (The court notes, parenthetically, that plaintiff has, in fact, rented the apartment subsequent to the commencement of this action.) Nor has plaintiff demonstrated that the balance of the equities lies in her favor.
The Board has articulated a bona fide concern for the safety and security of the 117 other families in the building as the reason for prohibiting brokers after 5:00 p.m., when the superintendent is not on duty to oversee the comings and goings of strangers, if the unit owner is not at home. By merely being there after 5:00 p.m. or by arranging for the broker to visit the apartment during normal business hours of 9 to 5, plaintiff could avoid any adverse effect on herself arising from the policy. Simply put, plaintiff — an absentee owner — has placed her convenience over the safety and security of her fellow unit owners who reside in the condominium.
Accordingly, plaintiff’s motion for a preliminary injunction is denied in all respects with regard to the policy concerning admission of brokers to the building. Furthermore, since the challenged "move-in/move-out fee” is clearly a proper subject for money damages, preliminary injunction is inappropriate in this regard as well.
Defendants’ cross motion to dismiss the complaint on the ground of lack of personal jurisdiction is denied. To the extent that defendant seeks summary judgment dismissing the complaint, the motion is premature, since issue has not been joined (CPLR 3212 [a]; Alro Bldrs. & Contrs. v Chicken Koop, 78 AD2d 512 [1st Dept 1980]). However, the court will construe the cross motion as seeking dismissal pursuant to CPLR 3211 (a) (8). To the extent that dismissal is sought on the basis of failure to serve the requisite officer of defendant (CPLR 311) and noncompliance with the mode of service specified in the order to show cause (see, Oil City Petroleum Co. v Fabac Realty Corp., 70 AD2d 859 [1st Dept 1979]), defendant’s objection has been rendered moot by this court’s amended mode of service directed in the order to show cause, with which plaintiff has concededly complied, and reservice of process on the registered agent for service of process designated in the *411 Declaration (see, Dashew v Cantor, 85 AD2d 619 [2d Dept 1981]).
Defendant is directed to serve an answer to the complaint within 10 days after service of a copy of this order with notice of entry (CPLR 3211 [fj).