[673 NYS2d 450]

WILLIAM QUINONES et al., Respondents, v BOARD OF MANAGERS OF REGALWALK CONDOMINIUM I et al., Appellants.

Second Department, May 26, 1998

## APPEARANCES OF COUNSEL

*Marshall & Bellard,* Garden City (*George Constantine* of counsel), for appellants.

*Wagner Davis & Gold,* New York City (*Steven R. Wagner* and *Ilyse S. Dolgenas* of counsel), for respondents.

## OPINION OF THE COURT

PIZZUTO, J.

The plaintiffs William and Zerina Quinones purchased a condominium unit at 71-1 Wolkoff Lane, Staten Island, in 1986. In March 1994 Ms. Quinones obtained a permit from the City of New York Department of Health, Bureau of Day Care, to operate a group family day care home at the condominium unit, for a maximum of 12 children between the ages of 2 and 12. In an exchange of several letters, the Board of Managers of the Regalwalk Condominium I (hereinafter the Board) expressed their concerns regarding the group family day care home and sought to have the Quinoneses discontinue its operation, and the Quinoneses attempted to assuage the Board's concerns. In a letter dated January 26, 1996, the Board notified William Quinones that the day care operation must cease. The Board also resolved to impose a $50 per day fine, commencing February 1, 1996, if the day care operation continued. William and Zerina Quinones then commenced the present action, *inter alia,* for a judgment declaring that they are entitled to operate a group family day care home at their condominium unit. They also moved to preliminarily enjoin the Board from interfering with the operation of their group family day care home. The Supreme Court, Richmond County, granted the preliminary injunction and we now affirm.

"A preliminary injunction may be granted in any action where it appears that the defendant threatens or is about to do, or is doing * * * an act in violation of the plaintiff's rights respecting the subject of the action * * * in any action where the plaintiff has demanded and would be entitled to a judgment restraining the defendant from the commission or continuance of an act, which, if committed or continued during the pendency of the action, would produce injury to the plaintiff" (CPLR 6301). However, while the granting of a preliminary injunction lies within the sound discretion of the court, it may not properly issue unless the plaintiff demonstrates a likelihood of ultimate success on the merits, irreparable injury absent the preliminary injunction, and a balancing of equities in favor of the plaintiff (*see, Grant Co. v Srogi,* 52 NY2d 496;

*Nassau Roofing & Sheet Metal Co. v Facilities Dev. Corp.*, 70 AD2d 1021).

While the defendants argue that the plaintiffs have failed on all three criteria, the salient question here is whether the plaintiffs have a likelihood of ultimate success on the merits, or whether, as the defendants argue, the plaintiffs are in violation of the condominium declaration and bylaws as interpreted by the Board, which interpretation is protected by the business judgment rule. For the reasons which follow, we find that the plaintiffs have demonstrated a likelihood of ultimate success on the merits.

The declaration of the condominium, required by Real Property Law § 339-n (6), states in pertinent part: "The use for which the Units is intended is residential occupancy, provided that, subject to all applicable governmental laws and regulations, any residential Unit may be used as a professional office if the owner thereof resides therein". The Board thus concludes that the commercial use of the plaintiffs' condominium for their group family day care home is impermissible.

As this Court held in *Schoninger v Yardarm Beach Homeowners' Assn.* (134 AD2d 1, 6), "[b]ecause of the manner in which ownership in a condominium is structured, the individual unit owner, in choosing to purchase the unit, must give up certain of the rights and privileges which traditionally attend fee ownership of real property and agree to subordinate them to the group's interest". Accordingly, the business judgment rule limits judicial review of decisions made by a condominium's board of managers to whether the board's "action was authorized and whether it was taken in good faith and in furtherance of the legitimate interests of the condominium" (*Schoninger v Yardarm Beach Homeowners' Assn., supra,* at 10). "The business judgment rule protects the board's business decisions and managerial authority from indiscriminate attack. At the same time, it permits review of improper decisions, as when the challenger demonstrates that the board's action has no legitimate relationship to the welfare of the [condominium], deliberately singles out individuals for harmful treatment, is taken without notice or consideration of the relevant facts, or is beyond the scope of the board's authority" (*Matter of Levandusky v One Fifth Ave. Apt. Corp.,* 75 NY2d 530, 540).

Applying the business judgment rule to the facts at bar, the Board's determination that the operation of a day care center in an individual unit violated the residential use restriction in the condominium declaration is not made in bad faith, and the

plaintiffs' allegations to the contrary are not sufficient to clearly establish the likelihood that they will succeed on the merits on that basis. Therefore, the plaintiffs did not prove their entitlement to injunctive relief based upon the claim that the Board improperly interpreted the restrictive use clause of the condominium declaration. Additionally, that the Social Services Law defines a group family day care home as a program which is operated at a family home (Social Services Law § 390 [1] [d]) does not, standing alone, require the Board to conclude that the plaintiffs' operation of such a day care program is a residential activity which does not violate the condominium's declaration (see, e.g., Woodvale Condominium Trust v Scheff, 27 Mass App Ct 530, 540 NE2d 206). However, as a matter of public policy, the Board is prohibited from enforcing the condominium declaration to bar the use of the plaintiffs' unit as a group family day care home.

Social Services Law § 390 (12) provides that no local municipality may "adopt or enact any law, ordinance, rule or regulation which would impose, mandate or otherwise enforce standards for sanitation, health, fire safety or building construction on a one or two family dwelling or multiple dwelling used to provide group family day care * * * than would be applicable were such child day care not provided on the premises" and that "no local government may prohibit use of a single family dwelling [or of a unit of a multiple dwelling classified as fireproof] for * * * group family day care where a permit for such use has been issued in accordance with regulations issued pursuant to this section" (Social Services Law § 390 [12] [a], [b]). Thus, it is clear by the plain terms of the statute that a local municipality cannot enact any regulations or restrictions which prohibit or make more onerous the requirements for operating a group family day care home. The issue presented here is whether the statute should be read to encompass the broader proposition that private parties cannot prohibit, through a restrictive use covenant, the operation of such a group family day care home.

An analogous issue was presented in the case of Crane Neck Assn. v New York City/Long Is. County Servs. Group (61 NY2d 154, cert denied 469 US 804). In Crane Neck Assn. v New York City/Long Is. County Servs. Group (supra), the owners of certain real property leased that property to New York City/Long Island County Services Group (an agency of New York State Department of Mental Retardation and Developmental Disabilities), and the property was used to house eight

profoundly retarded adults in need of constant supervision, in a six-bedroom home situated on two acres. The deed to the land, however, contained a restrictive covenant allowing only single-family dwellings, which definition the group home for the retarded adults did not meet. Nevertheless, the Court of Appeals concluded that the "covenant [could not] be equitably enforced because to do so would contravene a long-standing public policy favoring the establishment of such residences for the mentally disabled" (*Crane Neck Assn. v New York City / Long Is. County Servs. Group, supra,* at 160).

The Court of Appeals noted that Mental Hygiene Law § 41.34 (f) was established to "eliminate the legal challenges that were impeding implementation of the State policy" (*Crane Neck Assn. v New York City / Long Is. County Servs. Group, supra,* at 164) of placing mentally disabled persons in residential settings, as opposed to institutions. Mental Hygiene Law § 41.34 (f) provides that "[a] community residence established pursuant to this section and family care homes shall be deemed a family unit, for the purposes of local laws and ordinances". Although the statute spoke of only "local laws and ordinances", the Court of Appeals found that this language simply reflected the grounds which had historically been invoked to block placement of such community residences. The Court went on to state that "[p]rivate covenants restricting the use of property to single-family dwellings pose the same deterrent to the effective implementation of the State policy as the local laws and ordinances that had actually been the subject of the legal challenges. Given the avowed purpose of this law, we conclude that the Legislature did not enact subdivision (f) to erase the impediment resulting from single-family requirements found in laws and ordinances while leaving it intact in private covenants, and that the subdivision applies to such deed restrictions as well" (*Crane Neck Assn. v New York City / Long Is. County Servs. Group, supra,* at 164).

Similarly, although Social Services Law § 390 is expressly addressed to local municipalities, the legislative purpose of the statute is to remove impediments to the creation of day care facilities such as the one operated by the plaintiffs, and we must "construe the act in question so as to suppress the evil and advance the remedy" (*Matter of Sullivan Co. [Miller],* 289 NY 110, 114; *see also, Crane Neck Assn. v New York City / Long Is. County Servs. Group, supra,* at 166). As this Court has previously noted,

"as early as 1969, the New York Legislature recognized the serious shortage of child-care facilities throughout New York

State, and declared its policy to encourage the provision of such facilities (*see,* Social Services Law § 410-d). More recently, the Legislature found 'that there is a growing need to expand the availability and accessibility of safe, affordable and quality day care services for children' (L 1985, ch 804, § 1), and enacted Social Services Law § 390-a 'to explore, on a demonstration basis, alternative approaches to developing day care and to evaluate the effectiveness of these alternatives in accomplishing this purpose' (L 1985, ch 804, § 1) * * *

"Following the receipt of an evaluation report pursuant to Laws of 1985 (ch 804, § 2, adding Social Services Law former § 390-a [8]), the Legislature enacted the current Social Services Law § 390, which sets forth the requirements necessary for an individual seeking to obtain certification to provide in-home day-care services" (*People v Town of Clarkstown,* 160 AD2d 17, 22-23).

Given that the clear intent of the statute is to expand the availability and accessibility of such day care facilities, which remain in short supply in the State, and to remove impediments to such expansion, and that the condominium declaration here, like the restrictive covenant in *Crane Neck Assn. v New York City/Long Is. County Servs. Group (supra)* "pose[s] the same deterrent to the effective implementation of the State policy as the local laws and ordinances", we find that Social Services Law § 390 (12) applies to the restriction here contained in the condominium declaration. Thus, the Board may not enforce such restriction against the plaintiffs, and the plaintiffs have demonstrated their likelihood of ultimate success on the merits.

The plaintiffs have also established that they would suffer irreparable harm in the absence of the injunction, in that they would be forced to close down their day care operation entirely and would likely permanently lose most, if not all, of their established clients. Finally, given the need for such facilities and their shortage of availability in this State, as well as the fact that the defendants have not demonstrated any disruption or additional costs to the operation of the condominium or inconvenience to any of the occupants, we find that the equities strongly favor the plaintiffs' position. Thus, the Supreme Court, Richmond County, properly granted the plaintiffs' motion for a preliminary injunction.

O'Brien, J. P., Thompson and Sullivan, JJ., concur.

Ordered that the order is affirmed, with costs.