OPINION OF THE COURT
George M. Heymann, J.
*897 Petitioner commenced this holdover proceeding on the ground that the respondents violated a substantial obligation of their lease by using their apartment for commercial purposes, i.e., running a baby-sitting service.
Respondents have moved this court pursuant to CPLR 3211 (a) (7) for an order dismissing the complaint for failure to state a cause of action.
Petitioner has cross-moved for summary judgment pursuant to CPLR 3212 (b).
Factual Background
Mr. Puente has resided in the subject premises, located at 1111 Carroll Street, apartment 2B, Brooklyn, New York 11225, for 23 years, having been raised there along with his seven siblings by his grandmother, the former tenant of record. In 1997, Mr. Puente succeeded to possession of the apartment from his grandmother. He currently resides there with his wife, respondent Keshon Puente, their two-year-old child and Mr. Puente’s 15-year-old brother. Ms. Puente has lived in the rent-stabilized apartment for seven years with her husband. Subsequent to an inspection of the apartment by the New York State Office of Children and Family Services, Ms. Puente was issued a family day care registration, effective February 12, 2004 and expiring February 11, 2006. As a registered family day care provider she acknowledges that she is currently using her apartment for a day care service, caring for two children in addition to her own son. Respondents contend that, notwithstanding paragraph 1 of their rent-stabilized lease, which provides in relevant part that “[t]he apartment must be used only as a private Apartment to live in as a primary residence of the Tenant and for no other reason,” the State Legislature has preempted the area of regulation as it pertains to lease restrictions to allow for home based child care.
Petitioner alleges that such use of the apartment is in substantial violation of paragraph 1 of the lease and warrants a judgment of possession since the respondents failed to cure their alleged breach of the lease. Petitioner avers that it first became aware of respondent’s intent to use the subject apartment as a day care center in May 2003 when an inspector from the Department of Health visited the building in conjunction with Ms. Puente’s application for a permit; that it did not give its consent to allow the respondents to operate a “small baby sitting service”; and that, based on the observations of building *898 employees in November 2003, that at least two different women dropped off children in the building and that said women had a conversation with Ms. Puente in the lobby of the building, petitioner concluded that respondents had breached their lease. In addition, petitioner argues that the presence of additional children in the premises will “likely” cause additional stresses and wear and tear on the fixtures and structure in the apartment which petitioner, “in all likelihood,” would have to repair and that the “possibility” that noise will be generated that will disturb other building residents “cannot be ruled out.” (See, notice of cross motion, affidavit, 1111 12, 19.) In addition, petitioner relies on Social Services Law § 390 (12) that non-first-floor apartments in nonfireproof buildings cannot be used for family day care. (See, notice of cross motion, attorney’s affirmation, 11 3.)
Conclusions of Law
At issue here is whether the respondents are in substantial violation of paragraph 1 of their lease which limits the use of their apartment for residential purposes only and whether, if used as a day care facility, it is in violation of Social Services Law § 390 (12) because it is located on the second floor of a nonfireproof building.
In deciding whether, under the facts of this case, the family day care center is “2B” or not “2B” the court must find in the affirmative.
Social Services Law § 390 pertains to child day care and the requisite licensing and registration for child day care providers. Pursuant to said statute, a family day care home “shall mean a program caring for children for more than three hours per day per child in which child day care is provided in a family home for three to six children” (§ 390 [1] [e]) and such homes “shall register with the department and shall operate in compliance with the regulations of the department.” (§ 390 [2] [b].) “Procedures for obtaining a . . . registration . . . shall include a satisfactory inspection of the facility by the office of children and family services prior to issuance of the . . . registration.” (§ 390 [2] [d] [i].)
The crux of the arguments on both sides rests with the interpretation of subdivision (12) of section 390, which reads in relevant part as follows:
“(a) Notwithstanding any other provision of law, . . . no . . . city . . . shall adopt or enact any law, *899 ordinance, rule or regulation which would impose, mandate or otherwise enforce standards for sanitation, health, fire safety or building construction on a . . . multiple dwelling used to provide . . . family day care than would be applicable were such child day care not provided on the premises.
“(b) Notwithstanding any other provision of law: for the purposes of this subdivision, no local government may prohibit use of a single family dwelling for family day care . . . where a permit for such use has been issued in accordance with regulations issued pursuant to this section; nor may any local government prohibit use for family day care ... of a multiple dwelling classified as fireproof or prohibit use for family day care ... of a dwelling unit located on the ground floor of a multiple dwelling not classified as fireproof, where in either case a registration . . . for such use has been issued in accordance with regulations adopted pursuant to this section and such use is otherwise permitted under state fire and safety standards (the state code) and under any other existing standard for permitted uses of the multiple dwelling.”
Petitioner’s paramount argument is that the above section of the law is inapplicable in this case, citing Social Services Law § 390 (13), which provides that “[notwithstanding any other provision of the law, this section . . . shall not apply to child day care centers in the city of New York.” Petitioner’s reasoning that “the statutory terms ‘child day care provider’, [Social Services Law] at § 390 (1) (b); ‘child day care center’ [Social Services Law] at § 390 (1) (c) and ‘family day care home’, [Social Services Law] at § 390 (1) (e), all include the term ‘child day care’, which is utilized in § 390 (13)” and thus render this section of the law inapplicable herein is, in this court’s opinion, an incorrect reading of the statute. (See, petitioner’s affirmation in opposition to motion and in support of cross motion 11 6.) Although the definition of “family day care home” incorporates the phrase “child day care” (§ 390 [1] [e]) the definition of “child day care center” specifically exempts “a family day care home.” (Social Services Law § 390 [1] [c].)
As an alternative argument, petitioner states that “even if the statute was applicable to this Brooklyn property, the facts of this proceeding fall into an express exception in the statute. The premises are not located in a fireproof multiple dwelling *900 and, by the plain language of the statute, respondent may not utilize a second floor apartment for day care.” (See, petitioner’s notice of cross motion, attorney’s affirmation, 1i 3.) While it would appear on its face that such would be the case, a review of the case law that has dealt with this issue must lead this court to draw a different conclusion.
As stated in 65 Ocean Ave. Assoc. v Samuel (NYLJ, July 3, 2002, at 25, col 3 [Civ Ct, NY County]):
“A review of all the language of the above statutes makes clear two separate points: first, all aspects of the statute of the home based child care or family day care centers. The language of the statute lends itself to no other possible reading but that the legislature anticipated, expected, and desired that the care of children would occur in private homes. It would be unreasonable to surmise that this would only occur in one family homes owned by individuals who would also provide the care for children. It was entirely foreseeable and presumably anticipated that the care of many children would occur in apartments. If the legislature intended to exempt rent stabilized apartments it would and could have done so, the fact that there are no residential exceptions to this statute permits the construction that such child care may take place in any apartment so long as the care provider is in compliance with the rules that permit the care in the apartment . . .
“The status of the law appears to be reasonably well settled that the care for children in a residence is permissible, whether or not a prohibitive lease clause exists” (at 25, col 5).
In 680 Riverside Realty Co. LLC v Pena (Civ Ct, NY County, Aug. 30, 2002, Index No. 063626/2002), the court found that the respondents’ use of their apartment which was not located on the ground floor of a nonfireproof building to be residential in nature and not a substantial violation of the parties’ lease. There, as here, the respondents had a valid registration to operate their day care center; the agency that issued the registration inspected the premises and “apparently discerned no violation of law by respondents”; and “a fair interpretation of the statutes establish that respondents are not in violation of the given requirements as a matter of law.”
Annexed to petitioner’s affirmation in opposition to motion and in support of cross motion, as exhibit 1, is a “Report on *901 Fireproofing Inspection” for the subject premises which concludes that “[t]his residential building is not of fireproof construction as defined in the New York City Building Code.” While fire safety is no doubt a legitimate concern for the petitioner here as it was for the petitioner in Sorkin v Cross (NYLJ, Apr. 24, 1996, at 27, col 3 [Civ Ct, NY County]), there the court held that
“the fire protection standards for ‘family day care’ appear to be less stringent than similar requirements for ‘group family day care’ and ‘day care centers.’ The regulations make no mention of a requirement that ‘family day care’ be provided only on the first floor of a non-fire-proof dwelling ...” (at 7, col 4).
There, as here, the petitioner had not shown that the respondent had violated any fire regulations or had caused any violation to be placed against the subject building.
Forty-four years ago the issue of child care in residential apartments came to the fore in Diament v Isaacs (24 Misc 2d 1026 [Mun Ct, Kings County I960]). In finding that the care of three small children during the daytime hours did not constitute a substantial violation of the tenancy, the court noted that “[t]the proper care of working mother’s children is a basic social and economic problem of our time and society. The construction here sought by the landlord would have a crippling effect on an indispensable social technique.” (Id. at 1027-1028.)
Thirty years later, the Appellate Division, Second Department, in People v Town of Clarkstown (160 AD2d 17 [2d Dept 1990]) held that the State had preempted this field by enacting Social Services Law § 390, recognizing “that because of the economic stresses placed on families, especially mothers, the need for child care is increasing” (id. at 22) and that it was necessary for mothers to work in order to maintain an adequate standard of living or simply to escape poverty.
In determining whether the actions of the respondents in the case at bar created a substantial violation of their tenancy, the court must consider whether the activity taking place in their apartment was consistent with public policy and did not alter the residential character of the building or the neighborhood. (See, Vittorio Props. v Alprin, 67 Misc 2d 439 [Civ Ct, Bronx County 1971]; Young v Alexander, NYLJ, Sept. 7, 1994, at 27, col 5; Sorkin v Cross, supra.) The allegations raised by the petitioner regarding the use of the respondents’ apartment and *902 its effect on the building, the tenants therein and the surrounding neighborhood were speculative at best. There was no documentation submitted by petitioner that any actual stress or wear and tear in the building had occurred or that any tenants had been disturbed by the operation of a day care center in respondents’ apartment. Nor was there any complaint of excessive noise or any violations of health or safety cited. It would appear that if there were any violations they were technical or de minimis at best. (See, Park W. Vil. v Lewis, 62 NY2d 431 [1984].) The respondent Keshon Puente had a valid registration to operate her home day care center and said registration was issued by the state agency authorized to issue same after a formal inspection of the subject apartment. The Court of Appeals has held that “an agency’s interpretation of the statutes it administers must be upheld absent demonstrated irrationality or unreasonableness” (Lorillard Tobacco Co. v Roth, 99 NY2d 316, 322 [2003]) and that “[t]he ‘judicial function is exhausted when there is found to be a rational basis for the conclusions approved by the administrative body.’ ” (Matter of Park E. Land Corp. v Finkelstein, 299 NY 70, 75 [1949].)
In the instant matter, the respondents were operating their day care program pursuant to a valid registration issued by the appropriate state agency and thus it cannot be held that they have breached the use provision of their lease, without more. As noted, the petitioner’s concerns herein are based on speculation and conjecture as opposed to actual, negative, occurrences and do not rise to a level that warrants this court to overturn over 40 years of public policy regarding the use of residential apartments for child day care programs that are sanctioned by the state and properly licensed or registered.
Procedurally, the only relief sought by the respondents was a motion to dismiss for failure to state a cause of action. In 680 Riverside Realty Co. v Pena (supra), cited by the respondent, the court there denied that branch of the respondents’ motion to dismiss for failure to state a cause of action finding that the notices referred to the applicable sections of the Rent Stabilization Code, referred to the specific paragraphs of the lease allegedly violated by the respondents asserting that their premises were being used for commercial purposes, i.e., a day care center, and stated that numerous children were dropped off and kept at the premises. Similarly, the notice to cure herein contains the same information and the respondents concede such use of their apartment. However, unlike the instant matter, the respondents *903 in that case also moved for summary judgment pursuant to CPLR 3212.
In the case at bar, the petitioner sought summary judgment pursuant to CPLR 3212 (b). Upon such motions, the court may search the record and as a matter of law direct judgment in favor of any party. “If it shall appear that any party other than the moving party is entitled to a summary judgment, the court may grant such judgment without the necessity of a cross-motion.” (CPLR 3212 [b].)
Therefore, the respondents’ motion to dismiss pursuant to CPLR 3211 (a) (7) for failure to state a cause of action is denied. However, pursuant to CPLR 3212 (b) the court grants summary judgment in favor of the respondents.
Accordingly, the instant petition is dismissed.