OPINION OF THE COURT
Bruce E. Scheckowitz, J.
In this holdover proceeding, petitioner Riverdale Osborne Towers Housing Associates, LLC seeks to regain possession of 420 Watkins Street, 2H, Brooklyn, NY from Linda Keaton and Fred Keaton (respondents), on the grounds that they have violated the terms of their lease and HUD regulations by operating a day care at the premises, which are located in a HUD building. Both sides appeared in this proceeding through counsel. After multiple adjournments in the Resolution Part, this proceeding was referred to Part P for trial on February 6, 2013. On that date, the attorneys for both parties entered into a stipulation of settlement. The stipulation provided in pertinent part: “Respondents represent that although the premises is being used as a daycare center, it is only being used as an incidental business, which generates only incidental income.” “Respondent[ ] represents] that she has insurance to cover the use of the premises as a day care center and agrees to provide petitioner’s attorneys with proof of insurance and to provide additional proof if the insurance policy that respondent has expires.” The stipulation further provided that in the event of breach, either party could restore the proceeding to the court’s calendar for appropriate relief.
On March 28, 2013, petitioner moved to restore the proceeding back to this court’s calendar for a judgment and warrant against respondents on the grounds that respondents failed to provide petitioner with proof of the insurance policy to cover use of the premises as a day-care center. Petitioner withdrew the motion on May 15, 2013 without prejudice to petitioner filing a new motion, because respondent provided proof of her insurance policy per the stipulation.
Petitioner now moves this court again to restore the proceeding to the calendar for a judgment and warrant against respondents on the grounds that they have violated the terms *539 of the stipulation. Specifically, petitioner asserts that the operation of the day-care center at the premises constitutes respondents’ primary source of income, and accordingly, they have breached the paragraph in the stipulation limiting the operation of the day care to an “incidental business” which only generates “incidental income.” Respondents do not dispute that the day care generates their primary source of income but maintain that they have not breached the stipulation. Respondents argue that the term “incidental business,” as written in the stipulation and United States Department of Housing and Urban Development (HUD) Handbook, implies that in order to legally operate a business out of a HUD apartment, the operation of the business must be incidental to the tenants’ use of the apartment as their primary residence.
It is undisputed that New York State public policy supports the operation of day cares within places of residence. (See Social Services Law § 390.) Social Services Law § 390 has been strictly enforced by the courts which have found that the operation of a day care is permissible within rent-stabilized apartments. (See 65 Ocean Ave. Assoc. v Samuel, NYLJ, July 3, 2002 at 25, col 3 [Civ Ct, NY County 2002]; Carroll St. Props. v Puente, 4 Misc 3d 896 [Civ Ct, Kings County 2004]; Quinones v Board of Mgrs. of Regalwalk Condominium I, 242 AD2d 52 [2d Dept 1998].) However, the question presented here is whether running a day care in a HUD apartment falls under the rubric of the HUD regulations.
The HUD regulations, specifically 24 CFR 966.4 (d) (2), provide: “With the consent of the PHA, members of the household may engage in legal profitmaking activities in the dwelling unit, where the PHA determines that such activities are incidental to primary use of the leased unit for residence by members of the household.” 24 CFR 982.551 (h) (5) states: “Members of the household may engage in legal profitmaking activities in the unit, but only if such activities are incidental to primary use of the unit for residence by members of the family.” Additionally, a note to HUD Handbook 4350.3 REV-1, ch 6, 1i 6-9 (B) (3) provides: “Tenants who conduct incidental business in their unit and receive incidental business income are not in violation of paragraph 13, General Restrictions, of the Model Lease for Subsidized Programs.” While the Handbook does permit owners of the HUD buildings to establish rules prohibiting the amount of traffic, noise, signs, parking within the grounds, and hours of work performed, the Handbook does *540 not place any other restrictions on the incidental businesses that can be conducted from the residents’ apartments. Respondents state, therefore, that the operation of the day care is legal because the apartment is primarily their home and residence. It should be noted that petitioner does not dispute that the premises are respondents’ primary residence.
Additionally, respondent has provided this court with highly persuasive explanatory letters from HUD, which address the operation of home-based day cares in HUD buildings. In one memorandum, H. Richard Thomas, legal counsel at the HUD Office of Counsel, dated March 21, 2001, was asked to address the issue of whether a day care could be maintained in HUD housing located in California. The memorandum asserted that California Health and Safety Code § 1597.30 “provides authorization for the operation of small ‘Family Day Care Homes’ ” in California. As a result, H. Richard Thomas concluded that
“[ejvery provision in a written instrument entered into relating to real property which purports to forbid or restrict the conveyance, encumbrance, leasing, or mortgaging of the real property for use or occupancy as a family day care home for children is void and every restriction or prohibition in any such written instrument as to the use or occupancy of the property as a family day care home for children is void.”
Accordingly, it is clear to the court that the HUD Handbook and CFR permit residents occupying units in HUD buildings to operate businesses that generate a primary source of income for the tenant so long as the tenant is occupying the premises as his or her primary residence. The Handbook and CFR are replete with references that indicate that residents can operate a business from the premises, and specifies “limited babysitting” as a permissible use, so long as the business is incidental to the primary use of the unit for residence. (See HUD Handbook 4350.3 REV-1, ch 6, U 6-9 [B] [3].) Additionally, the May 21, 2001 HUD memorandum is explicit in its finding that HUD regulations limiting an in-home day-care facility, in contravention of state law, are unenforceable. Notably, petitioner does not cite any statutory authority or legal precedent that would indicate that respondents’ interpretation of “incidental business” within the rubric of the HUD Handbook is incorrect. Rather, petitioner merely cites the dictionary definition of “incidental,” which is inapposite here.
*541 It should also be noted that respondent has a 35-year tenancy at the premises and has been recertifying her income yearly in accordance with HUD requirements. Therefore, petitioner knew or should have known that respondent generates her primary income from the day care at the time it entered into the stipulation, as respondent has been running the day care for 15 years. Here the court will preserve the long-term tenancy.
Lastly, petitioner argues that the court should adopt its interpretation of “incidental business income” as written in the stipulation between the parties. However, “[i]t has long been the rule that ambiguities in a contractual instrument will be resolved contra proferentem, against the party who prepared or presented it.” (See 151 W. Assoc. v Printsiples Fabric Corp., 61 NY2d 732, 734 [1984], quoting Taylor v United States Cas. Co., 269 NY 360, 364 [1936].) Therefore, case law dictates that the discrepancy in the interpretation of paragraph 1 (c) of the stipulation should be resolved against the drafter of the stipulation, the petitioner. Furthermore, the court finds that the case law and supplemental authority submitted by respondents in support of their opposition to be extremely persuasive, thereby successfully refuting petitioner’s argument presented in its motion.
Accordingly, the motion is denied with prejudice.