(August 7, 1980)

■ In the Matter of ALTONA CITIZENS COMMITTEE, INCORPORATED, et al., Appellants, v TOWN OF ALTONA et al., Respondents.—Appeal from a judgment of the Supreme Court at Special Term, entered February 5, 1979 in Clinton County, which dismissed petitioners' application, in a proceeding pursuant to CPLR article 78, to compel respondents to act to open certain roads, and to declare a certain lease invalid. The judgment dismissing the petition should be affirmed. This proceeding, in which CPLR article 78 relief and declaratory relief are sought, arises out of the occupation of certain lands, owned by the State, by members of an Indian group known as Ganienkeh. Petitioner Altona Citizens Committee, Incorporated, is a not-for-profit corporation consisting mostly of citizens of the Town of Altona, which is located near the Indian settlement. This appeal has been considered with *Matter of Altona Citizens Committee v Hennessy* (77 AD2d 956), since the validity of the road closure order is common to both appeals. In or about 1974, a group of American Indians, claiming to be descendants of the Mohawk Nation, occupied approximately 800 acres of land, located at Moss Lake in Hamilton County, under a claim of right. They undertook to repel from the land unwanted persons by force of arms. On occasion near fatal consequences resulted (e.g., *Drake v State of New York*, 97 Misc 2d 1015). Negotiations between the State of New York and Ganienkeh brought about an agreement that Ganienkeh would be permitted to settle in a new 698.86-acre tract of land near the Town of Altona. This land is the subject of the instant litigation. The State leased the new tract to the respondent Turtle Island Trust Co. The trust, in turn, in September, 1977, permitted Ganienkeh to establish a settlement thereon as a licensee. Ganienkeh then barricaded the access roads. First, we consider petitioners' request for an order directing that the roads be opened and the barricades be removed. For reasons enunciated in *Matter of Altona Citizens Committee v Hennessy (supra)*, we find that the roads in question have been officially validly closed by Order No. 1142 of the State Department of Transportation, dated December 18, 1978, pursuant to section 212 of the Highway Law. The request for the removal of the barricades and to open the roads is, therefore, moot. Petitioners next contend that the lease with the Turtle Island Trust should be declared void on the grounds that: (a) the lease violates the provisions of the Park and Recreation Land Acquisition Bond Act; (b) the lease violates the restrictions contained in the deed by which the subject lands were conveyed to the State; (c) the lease violates the provisions of the order of Justice Sweeney, dated April 23, 1962, which approved the transfer of the subject land to the State; and (d) the lease violates the provisions of the State Finance Law. Preliminarily, we note that insofar as the petitioners seek to declare the lease void, a CPLR article 78 proceeding is not the proper procedural vehicle (CPLR 7803). Special Term recognized the "hybrid" character of the instant proceeding which seeks relief not available in a CPLR article 78 proceeding. However, this court is free to ignore any mischaracterization in that regard and to convert the proceeding into an action (CPLR 103, subd [c]; *Matter of Friedman v Cuomo*, 39 NY2d 81; Siegel, New York Practice, § 4, p 5). An action is the proper form of challenge in a taxpayer's suit to prevent illegal dispositions of State property (State Finance Law, § 123-b). We, therefore, treat the petition as a complaint which has been subjected to a motion to dismiss. Next, a second preliminary matter merits some discussion. Respondent Turtle Island Trust, relying on *Bruno v Codd* (47 NY2d 582), *Jones v Beame* (45 NY2d 402), and

*Saxton v Carey* (44 NY2d 545), contends that the legality of the instant lease is beyond judicial scrutiny because it was negotiated in the midst of a political settlement. We disagree. We do not read these cases as giving the State power to disregard rules of law whenever State action is connected to a political question. While these cases recognize that certain political judgments made by co-ordinate branches of government may be beyond judicial review, the cited cases do not authorize the State to settle political controversies with illegal contracts. Turning now to a consideration of the merits of petitioners' arguments for voiding the lease, we find that petitioners' first contention that the lease is violative of the provisions of the Park and Recreation Land Acquisition Bond Act (L 1960, ch 522), authorizing the expenditure of State moneys to acquire lands for conservation and outdoor recreation, is without merit. The subject property was gratuitously conveyed and not acquired through bond act funds. Thus, this act is inapplicable. Further, the Parks and Recreation Law contains no restriction on the alienation of such land (cf. Parks and Recreation Law, § 15.09). Petitioners next argue that the lease to Turtle Island Trust is in violation of the order of Mr. Justice Sweeney approving the deed transferring the land in question to the State, because that order approves the transfer only for "campsites, recreational, conservation or other public purposes." We disagree. Petitioners assert that this language was placed in the order in express recognition of the fact that the property was acquired under the afore-mentioned bond act. However, the petition does not so allege. Moreover, the record indicates that no bond act funds were expended in the purchase and that the lease was, in fact, executed for a public purpose since it furthered settlement of the Ganienkeh dispute. The contention that the deed contains restrictions that supposedly void the lease is also rejected. The reference in the deed to the Park and Recreation Acquisition Bond Act is merely to a map of lands to be acquired under the act and is included in the deed for identification purposes. It does not manifest "a clear intent of the parties to limit the use of the property to parks and recreational purposes", as petitioners urge. Petitioners' argument that the lease amounts to an illegal gift of public funds since no consideration was paid to the State is without merit. This was not alleged as a ground for relief in the petition. Moreover, under the terms of the lease, the lessee agreed to lease the premises in order to preserve native American culture, to educate Indians, to promote racial and cultural harmony and to relieve poverty among North American Indian Nations. These purposes promote a State interest. Consideration for the lease is also found in the agreement by the lessee to insure that a cultural and educational center will be opened on the premises within a reasonable time. Judgment affirmed, without costs. Sweeney, J. P., Staley, Jr., and Mikoll, JJ., concur; Main and Herlihy, JJ., dissent and vote to reverse in separate memoranda.

Main, J. (dissenting). I respectfully dissent. An examination of the underlying facts of this case clearly establishes that the subject 698.86-acre tract of land was given by the trustees of the William H. Miner Foundation to the State of New York for the use and benefit of all the people of the State as a recreation area. That this was the purpose of the transfer was expressly confirmed by the Supreme Court order of April 23, 1962, which authorized the transfer to the State, wherein it was specifically provided that the land was to be used "for campsite, recreational, conservation or other public purposes." In accordance with this obvious purpose of the conveyance, petitioners assert that they and other nearby residents of the area have used the subject tract, including Miner Lake, for fishing, camping, hunting

and other forms of recreation since the State's acquisition thereof on October 1, 1962. With these circumstances prevailing on September 28, 1977, the State leased the land to the Turtle Island Trust Company for a period of five years for the purpose of allowing a group of individuals known collectively as Ganienkeh to settle thereon as licensees of the trust company, thus excluding from the parcel petitioners and the rest of the citizens and taxpayers of this State. Ganienkeh was granted this privilege of exclusive occupation and use of the land with no corresponding rental or other obligation therefor as a result of and as a seeming reward for the *illegal conduct of a few of its members in forcibly occupying certain State lands known as the Moss Lake campsite in 1974 (see Drake v State of New York*, 97 Misc 2d 1015). In my judgment, under these circumstances petitioners have brought into serious question the legality of the subject lease by their contentions that it frustrates the obvious purpose of the original transfer of the land to the State by the Miner Foundation and also, most significantly, violates the terms of the 1962 court order cited above in that under the lease the land is being used for other than a legitimate public purpose. The net effect of the lease transaction is that law-breaking individuals, who claim to be immune from the laws of the State of New York as descendents of the Mohawk Indian Nation, but are not recognized as an Indian tribe by the United States Government, are being appeased because of their unlawful conduct with what amounts to a gift of the free use of a large tract of publicly owned land, and this is being done at the expense of the law-abiding citizenry of the State. Moreover, the sham transaction of a lease to the Turtle Island Trust Company was utilized to effectuate the gift, and the artificiality of the entire arrangement is well illustrated by the failure of the Turtle Island Trust Company to comply in any way with the lease provision whereby, as consideration for the lease, it was to establish a cultural and educational center on the property within a reasonable time. To date no such center has been established, while the five-year term of the lease continues to run. In sum, petitioners' allegations, accepted as true (see *Penato v George*, 52 AD2d 939, app dsmd 42 NY2d 908), raise grave doubts as to the propriety of the disposition of the land under the lease, and at minimum, petitioners are entitled to a trial where they will have an opportunity to demonstrate the rectitude of their position. Even though Indian claims to lands in this State and elsewhere may well have some merit, such claims must always be settled in an orderly manner through available legal procedures. Accordingly, Special Term erred insofar as it dismissed petitioners' application for declaratory relief.

Herlihy, J. (dissenting). I dissent upon the sole ground that there are factual issues which require a trial and, thus, the granting of judgment dismissing the entire application was premature because the legal issues for declaratory judgment are not yet determined. Since the causes of action for declaratory judgment are not legally insufficient, the dismissal was erroneous and the petitioners' application for declaratory relief should be reinstated.