OPINION OF THE COURT
Lawrence E. Kahn, J.
The proceeding will be converted to a declaratory judgment action, and the respondents will be awarded a judgment declaring that the memorandum of Henry A. Fernandez, issued on December 6, 1989, does not alter the respondents’ interpretation that existing statutes and regulations permit *906 chiropractors to collect specimens, including performing venipuncture to obtain appropriate samples, for submission to, and diagnostic testing by, independent licensed clinical laboratories.
During 1984, the Legislature amended section 6551 (3) of the Education Law to permit chiropractors to use "diagnostic services performed by clinical laboratories which services shall be approved by the board as appropriate to the practice of chiropractic”. (L 1984, ch 958.) Prior to that time, chiropractors were prohibited from using diagnostic testing that involved chemical or biological methods. The Board of Regents then promulgated a regulation allowing a chiropractor to "use for diagnostic purposes those clinical laboratory services which are contained within the required coursework of all registered doctoral programs in chiropractic in this State”. (8 NYCRR 73.4.) The change in the law permitting chiropractors to use the diagnostic services of independent clinical laboratories presented the issue of whether chiropractors were authorized to collect the specimens necessary for those tests to be conducted. In response to an inquiry, the respondents gave their interpretation upon the issue through a letter of Philip R. Johnston, Executive Secretary of the State Board for Chiropractic, dated March 14, 1985, which states in pertinent part that: "I am pleased to confirm that counsel to the Education Department has declared that in reference to recent legislation permitting chiropractors to use diagnostic laboratory services, chiropractors may perform veni puncture [sic] in order to obtain appropriate samples for submission to the laboratories.”
Thus, the interpretation of the Education Department that chiropractors could collect specimens, including those obtained by venipuncture to submit to independent laboratories for testing, was settled. However, on December 6, 1989, Henry A. Fernandez, a Deputy Commissioner with the Education Department, issued the following memorandum to all chiropractors:
"The Department has become aware of confusion concerning the use of clinical laboratory tests by chiropractors. The purpose of this memorandum is to ensure that all licensed chiropractors are aware that they may not perform clinical laboratory services in their offices, because of the provisions of New York State Education Law and Public Health Law. The pertinent sections of the law are as follows:
*907 "Education Law, section 6551(3) prohibits a chiropractor from using in his or her practice 'diagnostic or therapeutic methods involving chemical or biological means except diagnostic services performed by clinical laboratories * * *’ (emphasis added).
"Public Health Law, section 574 requires a permit for any person to 'own or operate a clinical laboratory or blood bank, solicit or accept a specimen for laboratory examination or collect, process or store human blood or blood derivatives * * *>
"On a separate issue, chiropractors should also be aware that while they may offer nutritional counseling or sell nutritional products, they may not advertise or otherwise represent such services, or bill for them, as part of the practice of chiropractic. Nutritional counseling is an unregulated activity in New York State. Anyone may give nutritional advice or sell dietary products. However, pursuant to Education Law, section 6551(1), the practice of chiropractic is defined as '* * * detecting and correcting by manual or mechanical means * * *’ The statutory definition of practice does not include nutritional counseling. Chiropractors providing such services should be careful to separate nutritional advice or the sale of nutritional products from their professional services, so that patients do not confuse the two and are not led to believe that the nutritional advice and products are part of the professional practice of chiropractic. Such services should not be included in bills for professional services. A chiropractor who misleads a patient or insurer in this respect may be charged with unprofessional conduct or fraud.”
The petitioners read the above memorandum as announcing a new rule by the Education Department that chiropractors could no longer collect specimens for submission to independent clinical laboratories. They commenced this article 78 proceeding, contending that the memorandum is an administrative rule enacted without following the procedures set up in the State Administrative Procedure Act, and on the merits is an erroneous construction of the controlling statutes. The respondents served an answer which contends that the petitioners misconstrued the Fernandez memorandum. The respondents related that during 1988 the Acting Executive Secretary of the New York State Board of Chiropractic received a communication that a recent review by the Health Department had revealed that chiropractors were billing for *908 tests performed in their offices. The respondents contend that the Fernandez memorandum was issued simply to advise chiropractors that they could not perform clinical testing in their offices, and bill for same, and was not intended to address in any manner the question of whether chiropractors could collect specimens for submission to independent clinical laboratories. That being the case, the respondents requested dismissal of the proceeding.
When parties have brought litigation in the wrong procedural form, the court should exercise its discretion under CPLR 103 and convert the litigation to the appropriate form (Matter of Altona Citizens Comm. v Town of Altona, 77 AD2d 954, affd 54 NY2d 908). "Where the meaning or validity of a statute is in question and no questions of fact are present, declaratory judgment is proper” (Namro Holding Corp. v City of New York, 17 AD2d 431, 434). "The remedy of declaratory judgment is available, not only where the validity of a statute is in question, but also where its construction or its application to an undisputed set of facts is in question”. (Bunis v Conway, 17 AD2d 207, 208, lv denied 17 AD2d 1036, lv dismissed 12 NY2d 882.) There must be an actual controversy (Corso v Nasser, 42 AD2d 822), and the remedy is especially appropriate when it is in the public interest to address the issues raised (Matter of Dekdebrun v Hardt, 68 AD2d 241, 244).
The foregoing ingredients are present here. There is an actual controversy between the parties as to the effect of the Fernandez memorandum. The public has a great interest in knowing whether the respondents’ interpretation of existing law permits chiropractors to collect specimens, especially by venipuncture for submission to independent laboratories. In another context, the Legislature has expressed its view that government agencies should issue clear declaratory rulings as to how a statute or regulation enforced by it would be applied to a particular set of facts (State Administrative Procedure Act § 204).
As to the merits, the interpretation given by an administrative agency to the statutes it enforces, and its own regulations, will be accorded great weight by the courts (Matter of Town of Mamaroneck PBA v New York State Pub. Employment Relations Bd., 66 NY2d 722). The same reasoning should apply to a memorandum issued by an administrative agency. If the agency contends that the memorandum means one thing, and the petitioner argues for another meaning, the court should *909 accept the agency’s interpretation, unless irrational. Consequently, the court will accept the respondents’ construction that the December 6, 1989 Fernandez memorandum does not alter the respondents’ existing position that under current statutes and regulations, chiropractors can collect specimens from patients, including the use of venipuncture, and submit those specimens to independent laboratories for analysis.