■ WILLIAM A. STRAUS, Respondent, v 345 EAST 73 OWNERS CORP., Appellant, et al., Defendant.—Order of the Supreme Court, New York County (Irma Vidal Santaella, J.), entered on February 7, 1991, which granted plaintiff's motion for summary judgment on liability with respect to the first, second, third, fourth, sixth and tenth causes of action and referred the matter of damages to a Special Referee for a report and recommendations, is unanimously reversed on the law and the motion for summary judgment denied, with costs and disbursements.

Defendant 345 East 73 Owners Corp. is a cooperative housing corporation that owns the premises at 345 East 73rd Street in Manhattan. Plaintiff William A. Straus, who had acquired an apartment in the building, entered into a contract of sale in October of 1988 with Sharron and Pedro Font for a purchase price of $247,000. The agreement specified a closing date of January 6, 1989 and provided that in the event of a default, Straus' liquidated damages would be limited to the $500 down payment. On November 28, 1988, the contract was amended to add the Fonts' adult son, Peter Vidaurreta, as one of the buyers, and it was represented that Vidaurreta would be the sole occupant of the apartment. The cooperative's admissions committee interviewed the three applicants on December 7, 1988. Pedro Font stated that he would be responsible for the maintenance charges but that he and his wife's primary purpose in purchasing the premises was to provide a residence for Vidaurreta, and they also wanted the tax advantages of owning a cooperative apartment. Thereafter, the admissions committee advised the cooperative's managing agent, who informed Straus and his attorney, that it had approved the Fonts and Vidaurreta. The committee's letter to management mentioned that its consent was "on condition that Peter, Jr., is the sole occupant and that Mr. and Mrs. Font guarantee the maintenance."

One day prior to the scheduled closing, the cooperative requested that the Fonts execute a guaranty, as well as rider to the proprietary lease that "no one other than Peter Vidaurreta shall reside in the Apartment at any time for any period of time without the prior written consent of the Lessor and that neither Pedro Font nor Sharron Font nor any person other than Peter Vidaurreta shall have any right to occupy the Apartment at any time for any period of time." However, the Fonts refused to sign the documents, and the closing was adjourned. The cooperative's lawyer then wrote to the Fonts' counsel to the effect that if they did not agree to such a restriction, the board of directors would not accept the transfer of the shares. When the cooperative continued to insist that the sale could not proceed without adoption of the limitation, the Fonts elected to cancel the contract. The instant action ensued. It should be noted that several weeks after serving the original complaint against the corporation and its president, defendant Neil Savasta, plaintiff amended his pleading to add two more claims, for a total of thirteen.

In that regard, plaintiff alleges that notwithstanding that he had been informed, both personally and through his counsel, that the sale had been approved, the Fonts chose not to go ahead with the agreement as a result of the corporation's demand for amendment of the proprietary lease's occupancy clause and that in good faith reliance upon the cooperative's "favorable consideration" of the Fonts' offer to purchase his shares, he had bought another apartment, which he was ultimately forced to sell at a loss of $82,233.40. Accordingly, plaintiff charges, he was damaged by, in part, the corporation's improper attempt to modify the proprietary lease, by its breach of both this lease and its fiduciary duty, by the violation of Real Property Law § 235-f and by tortious interference with contract.

After the parties had engaged in some disclosure, in the course of which defendants conceded that there were no written resolutions of the shareholders or board of directors authorizing variations in the form of the proprietary lease and no minutes relating to the Fonts' application, plaintiff moved for partial summary judgment as to liability. In granting the motion, the Supreme Court reviewed the undisputed facts, the provisions of section 235-f of the Real Property Law and the decision by the Court of Appeals in *Fe Bland v Two Trees Mgt. Co.* (66 NY2d 556), and concluded by observing that "another prospective tenant in an identical situation at the same time was approved by the Board of Directors. Why one application

was approved and the other not approved is not explained by the co-op landlord. In the absence of an explanation by the landlord legally or factually differentiating the two applications, the landlord is without a defense." It should be noted that in support of his position, plaintiff relies upon paragraphs 6 and 14 of the proprietary lease which state, respectively, that:

"6. Each proprietary lease shall be in the form of this lease, unless a variation of any lease is authorized by lessees owning at least two-thirds of the Lessor's shares then issued and executed by the Lessor and Lessee affected. The form and provisions of all the proprietary leases then in effect and thereafter to be executed may be changed by the approval of lessees owning at least 66⅔% of the Lessor's shares then issued, and such changes shall be binding on all lessees even if they did not vote for such changes except that the proportionate share of rent or cash requirements payable by and [sic] Lessee may not be increased nor may his right to cancel the lease under the conditions set forth in Paragraph 35 be eliminated or impaired without his express consent. Approval by lessees as provided for herein shall be evidenced by written consent or by affirmative vote taken at a meeting called for such purpose * * *

"14. The Lessee shall not, without the written consent of the Lessor on such conditions as Lessor may prescribe, unless provided herein or hereafter pursuant to Paragraph 6 above, occupy or use the apartment or permit the same or any part thereof to be occupied or used for any purpose other than as a private dwelling for the Lessee and Lessee's spouse, their children, grandchildren, parents, grandparents, brothers and sisters and domestic employees, and in no event shall more than one married couple occupy the apartment without the written consent of the Lessor."

Moreover, Article V, section 1, of the cooperative's bylaws provides that:

"The Board of Directors shall adopt a form of proprietary lease to be used by the Corporation for the leasing of all apartments and other space in the apartment building, if any, to be leased to shareholder tenants under proprietary leases. Such proprietary leases shall be for such terms, with or without provisions for renewals, and shall contain such restrictions, limitations and provisions in respect to the assignment thereof, the subletting of the premises demised thereby and the sale and/or transfer of the shares of the Corporation

appurtenant thereto, and such other terms, provisions, conditions and covenants as the Board of Directors may determine.

"After a proprietary lease in the form so adopted by the Board of Directors shall have been executed and delivered by the Corporation, all proprietary leases (as distinct from the house rules) subsequently executed and delivered shall be in the same form except with respect to the statement as to the number of shares owned by the lessee, the use of the premises and the date of commencement of the term, unless varied in accordance with the terms thereof."

Plaintiff urges that the foregoing sections, as well as Real Property Law § 235-f, which renders it unlawful for a landlord of residential premises to restrict occupancy by excluding the tenant's immediate family members, all clearly demonstrate that the corporation, by insisting that the Fonts accept the subject limitations contravened its fiduciary, legal and contractual obligations to plaintiff. In response, defendants correctly assert that there are unresolved questions of fact concerning whether the sale had ever been unconditionally approved, whether the board acted in good faith and whether there was a breach of the bylaws, proprietary lease and/or their fiduciary duty. It is defendants' contention that the cooperative had been confronted with a series of applications by parents interested in obtaining apartments for their children. This situation concerned the corporation since it presented a situation wherein numerous individuals might occupy the units, either the parents themselves or roommates of the children, in order to subsidize the carrying charges. To avoid such a contingency, the cooperative instituted a policy requiring such purchasers to sign a letter stating that only their children would live there. However, in December of 1988, the cooperative determined that it would be more binding to have the buyers execute agreements in which parents consented not to occupy apartments that they were acquiring on behalf of their children. Defendants further assert that, contrary to the finding by the Supreme Court, the other purchaser approved by the board of directors was accepted subject to the identical condition imposed upon the Fonts, the only distinction being that plaintiff's buyers were asked to sign an agreement rather than a letter due to the implementation of the new policy. In any event, defendants argue, it is not clear that the cooperative's conduct caused the Fonts to cancel the contract, and they may simply have changed their minds about purchasing the shares to plaintiff's apartment.

As defendants correctly point out, the only written evidence

of approval of the Fonts' application is a letter from the admissions committee and not from the board of directors itself, and it is not certain that either the bylaws or the corporation's regular practice allows the admissions committee to obligate the board. Even more significantly, in view of the conditional nature of the approval and the lack of any formal board resolution, there is certainly a factual question as to whether or not plaintiff was entitled to rely upon the favorable action by the admissions committee. Similarly, summary judgment was not appropriate with regard to the cause of action under Real Property Law § 235-f. Assuming that this section does apply to cooperative apartments, the rights that defendants purportedly abridged belonged to the Fonts, and it is not at all apparent that plaintiff may assert another party's statutory rights *(see, Matter of Krauskopf v Perales,* 139 AD2d 147, *affd* 74 NY2d 730).

Yet, even if plaintiff does possess the necessary standing, there is absolutely no indication that the corporation's actions proximately caused his injury, not only as to the alleged Real Property Law violation but also in connection with the claims relating to the supposed breach of the proprietary lease *(Azzue v Galore Realty,* 172 AD2d 467, *lv denied* 78 NY2d 856). While defendants admit that the bylaws may preclude the cooperative from amending an existing proprietary lease as to usage without a two/thirds vote of the shareholders, they believe that the cooperative does have the authority to mandate a variation from a prospective purchaser, who is buying the shares with full knowledge of the limitation being imposed on the usage of the apartment. Since the language of the relevant provision of the bylaws does not, as a matter of law, support the position of either plaintiff or defendants, summary judgment is inappropriate *(see, IBM Credit Fin. Corp. v Mazda Motor Mfg. [USA] Corp.,* 152 AD2d 451).

Neither *Fe Bland v Two Trees Mgt. Co. (supra),* which invalidated the imposition of a transfer fee, or "flip tax", as not permitted by the corporate bylaws or proprietary lease involved in that case, nor *Matter of Levandusky v One Fifth Ave. Apt. Corp.* (75 NY2d 530), which held that the business judgment rule is applicable to decisions made by corporate directors of a cooperative or condominium, requires a different result. It should be noted that in *Matter of Levandusky v One Fifth Ave. Apt. Corp. (supra,* at 538), the Court of Appeals declared that "[s]o long as the corporation's directors have not breached their fiduciary obligation to the corporation, 'the exercise of [their powers] for the common and general inter-

ests of the corporation may not be questioned, although the results show that what they did was unwise or inexpedient.' *(Pollitz v Wabash R. R. Co.,* 207 NY 113, 124.)" Although "[t]he members of the board of directors have a duty to their cooperators to make determinations unencumbered by purposes other than the best interests of the people they represent" *(Bernheim v 136 E. 64th St. Corp.,* 128 AD2d 434, 435), the record herein is devoid of evidence that defendants' actions were taken in defiance of the best interests of the cooperative and, thus, that they contravened their fiduciary responsibility. Plaintiff should not, therefore, have been accorded summary judgment on this basis either. Finally, since defendants are not liable for plaintiff's attorney's fees unless he ultimately recovers damages from them, summary judgment was also unwarranted as to this cause of action. Concur —Milonas, J. P., Wallach, Ross, Asch and Smith, JJ.