*149 OPINION OF THE COURT
Howard Berler, J.
Motion for an order granting summary judgment is hereby granted in favor of plaintiffs on their first and second causes of action and defendants’ counterclaims are hereby dismissed.
Plaintiffs terminated defendants’ membership as a result of defendants’ failure to comply with plaintiffs’ by-laws and rules and regulations because (a) defendants remained on plaintiffs’ premises during the winter season in violation of plaintiffs’ Winter Occupancy Rules and Regulations and, additionally, in violation of a prior court stipulation dated September 10, 1993, which was entered into in a prior action between the parties entitled W.O.R.C. Realty Corp. v Carr (Sup Ct, Suffolk County, index No. 27176/91 [hereinafter referred to as the prior action]); and (b) defendants constructed an addition to their cottage (a 5 foot by 10 foot deck) without first obtaining the approval of plaintiffs or any applicable governmental or quasi-governmental agencies.
Plaintiff, West Oak Recreation Club, Inc. (hereinafter referred to as West Oak), is a New York corporation which provides recreation facilities for members and their families during the summer months and promotes social activities during the winter months. Plaintiffs own 289 acres of land on which members may build up to 283 cottages. Parenthetically, W.O.R.C. Realty Corp. (hereinafter referred to as W.O.R.C.), is a wholly owned subsidiary of West Oak. All members, including defendants Carrs, are required to abide by plaintiffs’ governing documents, including their by-laws and rules and regulations which provide, among other things, that the general management and control of plaintiffs shall be entrusted to a board of directors which has the right and duty to enforce the by-laws and rules and regulations. The Carrs executed an application for membership, which contained the following provision, which defendants agreed to: “In consideration of admission thereto, I further agree that if elected to membership, I will obey the By-Laws and Rules and Regulations, as they exist or may hereinafter be enacted or amended.”
The by-laws provide, at article XII, that all modifications or additions to any cottage shall not be permitted unless the member first obtains authority from any applicable governmental agencies and from West Oak’s Building Committee. The bylaws state:
“1. All building plans, new structures, structural modifications or additions shall be submitted to the Building Commit *150 tee for approval before modifications are made or construction of new structures or additions begin. A signed approved building permit must be conspicuously displayed during all phases of construction.
“2. Approval must also be obtained of the proper government authority before construction may begin * * *
“4. All plans, new structures, structural modifications, additions or removals must comply with the W.O.R.C. Building Regulations as the failure to do so can result in a suspension and possible termination of membership and its rights and privileges.”
In complete disregard of the above-cited by-law provision, defendants constructed a 5 foot by 10 foot deck without (a) submitting same for approval to the Building Committee; (b) obtaining a signed building permit, which was to be conspicuously displayed during all phases of construction; (c) obtaining proper governmental authority; and (d) complying with plaintiffs’ building regulations.
Plaintiffs’ Winter Occupancy Rules and Regulations (hereinafter referred to as the Winter Rules) provide that members of West Oak may not occupy their cottages overnight from December 1st through March 31st of the following year. The only exception is those who have been granted “caretaker status” by the West Oak board of directors. Said Winter Rules specifically provide, at paragraph 2, that “[c]aretaker status is awarded to a limited number of members in good standing and for a limited period of up to five (5) years by the Board of Directors.”
By a stipulation of settlement which was entered into in the prior action, defendants were given caretaker status for a period of five years (retroactive to the date they first began remaining on the premises during the winter months without permission) through November 30, 1996. Defendants applied for caretaker status for the 1996-1997 winter season, albeit after the time to do so had expired. In doing so, defendants blacked out (presumably with a magic marker) that portion of their application in which they acknowledged that the caretaker status can be terminated by either party. The part of the application which was blacked out by the defendants is as follows: “I (we) further understand that my (our) caretaker status can be terminated by either party at any time without cause or justification by providing written notification to the other party sixty (60) days prior to such termination. Upon said termination, I (we) agree to vacate WORC property and will have no *151 further occupancy rights during the caretaker season (12/1-3/31).”
Because defendants altered the application and because it was untimely, plaintiffs denied their request for caretaker status. Despite said denial, defendants failed to vacate the premises by November 30, the time by which all noncaretaker members are required to vacate.
In accordance with the by-laws, at article X, paragraph 6, at a meeting held on January 11, 1997, plaintiffs’ board of directors voted to suspend defendants’ membership as a result of defendants’ construction of the deck without proper authorizations and their failure to vacate the premises during the winter months.
Thereafter, plaintiffs caused defendants to be served with a notice dated January 24, 1997, which recites the foregoing and concludes: “please take further notice that, if you do not take acts to comply with the Bylaws, Rules and Regulations, Building Regulations, Building Regulations and Winter Occupancy Rules of [plaintiffs] within twenty (20) days from today’s date, [plaintiffs] will call a special meeting of the members or in the alternative will cause the members to vote at a regular meeting, with regard to whether to terminate your membership in [plaintiffs], in accordance with Article X(7) of the Bylaws.”
Defendants did not respond to the notice and took no steps to cure their violations. Thereafter, the board called a special meeting of the membership for the purpose of voting whether to terminate defendants’ membership (the by-laws provide, at article X, paragraph 7, that the board “may terminate any suspended member subject to the approval of 75% of the members making a quorum at a regular or special meeting”). A special meeting was held on March 22, 1997, for the purpose of voting as to whether to terminate defendants’ membership.
Pursuant to West Oak’s by-laws, the attendance of only 40 members is required to constitute a quorum. What was remarkable about the March 22, 1997 meeting was that although it was held at West Oak during the winter recess, nearly 100 residents traveled from such distances as Connecticut, Westchester, New Jersey and Rockland County to vote to terminate defendants’ membership. The vote was 91 in favor of termination, 0 against termination and 3 abstentions.
By notice dated April 9, 1997, plaintiffs advised defendants that their membership had been terminated and that if they *152 did not vacate the premises, the within action would be commenced. It stated: “please take further notice that, if you do not immediately vacate the Premises, [plaintiffs] will proceed in accordance with the law.”
Defendants did not vacate the premises and, it is alleged, instead have embarked on a pattern of harassment and abusive conduct which is detrimental to the safety of plaintiffs, their members and their children.
The law in New York is well settled that a corporation’s promulgation and implementation of by-laws and internal rules and regulations is governed by the “business judgment rule” which limits a court’s inquiry to whether the actions were (1) authorized, (2) taken in good faith, and (3) in furtherance of the legitimate interests of the corporation (Matter of Levandusky v One Fifth Ave. Apt. Corp., 75 NY2d 530 [1990]; Schoninger v Yardarm Beach Homeowners’ Assn., 134 AD2d 1 [2d Dept 1987]; Cooper v Greenbriar Owners Corp., 239 AD2d 311 [2d Dept 1997]; 3060 Ocean Ave. Owners v Bistricer, 247 AD2d 275; see also, In re Croton Riv. Club, 52 F3d 41 [2d Cir 1995]).
In Levandusky {supra, at 536), the Court of Appeals recognized that when one purchases a home in a cooperative or condominium, they relinquish certain rights and agree to abide by the rules promulgated by the board. The Court stated: “As courts and commentators have noted, the cooperative or condominium association is a quasi-government — ‘a little democratic sub society of necessity’ * * * The proprietary lessees or condominium owners consent to be governed, in certain respects, by the decisions of a board. Like a municipal government, such governing boards are responsible for running the day-to-day affairs of the cooperative and to that end, often have broad powers in areas that raiige from financial decisionmaking to promulgating regulations regarding pets and parking spaces * * * Authority to approve or disapprove structural alterations, as in this case, is commonly given to the governing board.” (Matter of Levandusky v One Fifth Ave. Apt. Corp., supra, at 536 [citations omitted].)
Defendants’ counterclaim at bar — that plaintiffs’ implementation of residency rules is violative of the Constitution — has no basis in law or fact and is in direct contravention of the very nature of cooperative or condominium living. Defendants’ characterization of the plaintiffs’ regulations constitute nothing more than a vain attempt to cloud the fact that any corporation may enact and enforce regulations in accordance with the *153 powers granted it by its governing documents with which its shareholders/members must comply (Fe Bland v Two Trees Mgt. Co., 66 NY2d 556 [1985]; Wapnick v Seven Park Ave. Corp., 240 AD2d 245 [1st Dept 1997]).
Moreover, deciding to terminate the membership of one — but not another — is precisely one of the functions which is within the ken of a board. In Board of Mgrs. v Cooper Third Assocs. (NYLJ, July 24, 1991, at 21, col 4 [Sup Ct, NY County, Arber, J.]), the court granted judgment in favor of the condominium board of managers which had decided to pursue collection of unpaid common charges from the sponsor, but not other unit owners. In granting judgment, the court stated, “The defendant’s allegation of selective enforcement is based on scant evidence with little probative value. But even if Associates is the only unit owner against whom legal action has ever been brought, no genuine issue as to whether the Board’s good faith is presented since this is precisely the type of business decision that the Court of Appeals indicated would not warrant judicial scrutiny’ (Board of Mgrs. v Cooper Third Assocs., NYLJ, July 24, 1991, at 22, col 1; see also, Straus v 345 E. 73 Owners Corp., 181 AD2d 483 [1st Dept 1992]; Simpson v Berkley Owner’s Corp., 213 AD2d 207 [1st Dept 1995]).
Accordingly, defendants’ complaint that they are being “harassed” by plaintiffs’ decision to terminate their membership and thereby preclude them from certain activities in which other members are permitted to participate, is simply spurious and unavailing. Same does not give rise to a “good faith” issue which must be shown when selective enforcement is claimed.
Defendants’ other counterclaim, to wit: that plaintiffs’ imposition of residency requirements is in violation of the United States and New York State Constitutions — is similarly unavailing because it ignores the very value of cooperative living, i.e., that when one purchases in a community such as this, they agree to be governed by the board of directors which is responsible for running the offices of such a community.
Accordingly, plaintiffs’ motion is granted in all respects.