Matter of Spano v Novello (2003 NY Slip Op 23969)

Matter of Spano v Novello

2003 NY Slip Op 23969 [2 Misc 3d 864]

October 14, 2003

Supreme Court, Albany County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

As corrected through Wednesday, May 5, 2004

[*1]
In the Matter of Andrew J. Spano, as County Executive for County of Westchester, et al., Petitioners,
v
Antonia C. Novello, as Commissioner of the New York State Department of Health, et al., Respondents.
Supreme Court, Albany County, October 14, 2003

APPEARANCES OF COUNSEL

Charlene M. Indelicato, County Attorney (Linda Trentacoste of counsel), for petitioners. Eliot Spitzer, Attorney General (Lisa Ullman of counsel), for respondents.

{**2 Misc 3d at 864} OPINION OF THE COURT

John G. Connor, J.
Petitioners seek by order to show cause an order and judgment declaring respondents' demand seeking $7,304,980.44 in Medicaid {**2 Misc 3d at 865}reimbursement for psychiatric care provided to Medicaid recipients between 1984 and 1992 to be an error of law, arbitrary and capricious. Petitioners also seek a preliminary injunction enjoining the respondents from taking possession of $7.3 million of Westchester County's funds. In addition, petitioners seek by motion to join St. Vincent's Catholic Medical Centers of New York and New York-Presbyterian Hospital as parties to this action and to convert this CPLR article 78 proceeding into an action seeking both declaratory, injunctive and monetary relief.
Respondents oppose the application and the motion and allege the respondents Comptroller Hevesi and Commissioner Stone are not proper parties to this proceeding, the demand from the Department of Health was rational, the demand letter of January 14, 2003 to the County of Westchester was not untimely and not barred by laches. The respondents also alleged the petitioners are not entitled to a preliminary injunction.
The State of New York participates in the federal Medicaid program which provides financial assistance to states for necessary medical care provided to indigent persons (see, 42 USC § 1396 et seq.). Generally, the federal program pays the State approximately 50% for Medicaid expenditures. The New York State Department of Health (NYSDOH or Department) calculates the County's share of the expenditures after reimbursement from federal and state [*2]funds.
For a hospital to be certified as a Medicaid provider it must meet specific conditions of participation (see, 42 USC § 1395cc). The hospital must be licensed by the New York State Department of Health and the State is responsible for determining if the hospital meets the required criteria. If a hospital provides psychiatric treatment to patients it must be licensed by either the NYSDOH or the New York State Office of Mental Health (NYSOMH).
If a general hospital contains psychiatric units they are licensed by NYSDOH pursuant to Public Health Law article 28 and by NYSOMH pursuant to Mental Hygiene Law § 31.04 (a) (4). Private freestanding psychiatric hospitals are licensed by NYSOMH pursuant to Mental Hygiene Law article 31.
If an institution seeks certification as a psychiatric hospital by the State of New York, federal regulations require that such hospital be "primarily engaged in providing . . . psychiatric services for the diagnosis and treatment of mentally ill persons"{**2 Misc 3d at 866} (42 CFR 482.60). The Medicaid statute specifically excludes patient care at an institution for mental diseases. A certification of a facility as a "psychiatric hospital" disqualifies an institution from Medicaid reimbursement (see, 42 USC § 1396d). From its inception, the Medicaid Act excludes reimbursement for services provided to patients at any institution for mental diseases (IMD) (see, 42 USC § 1396d [a] [1]; [i]; 42 CFR 435.1008 [a] [2]; 441.13 [a] [2]). IMD is defined in the statute as "a hospital, nursing facility, or other institution of more than 16 beds, that is primarily engaged in providing diagnosis, treatment, or care of persons with mental diseases, including medical attention, nursing care and related services" (42 USC § 1396d [i]).
St. Vincent's Hospital and Medical Center in Westchester County, New York (St. Vincent's), was certified by the State as a psychiatric hospital on June 23, 1966 until 1992. In 1992, St. Vincent's was recertified by the State as a psychiatric unit of St. Vincent's Hospital and Medical Center in New York City.
New York Hospital Westchester Division (New York Hospital) was certified by the State as a psychiatric hospital from 1966 through 1990. On January 1, 1991, New York Hospital was recertified by the State as a psychiatric unit of New York Hospital-Cornell Medical Center in New York City.
In a letter dated January 14, 2003 the NYSDOH advised the County that in the early 1990's the federal government disallowed the State's claim for federal Medicaid reimbursement for psychiatric care provided to residents between 1984 and 1992. After a federal audit, the State was notified that the Medicaid reimbursement disallowances amounted to $38 million. After years of litigation and appeals, the federal government and the State attained a settlement whereby the agreed upon disallowances totaled $32,591,732. The letter informed the County that the State sought payment of $7,304,980.44 because of "two disallowances in the early 1990's of the State's claims for federal Medicaid reimbursement for psychiatric care provided to Medicaid recipients." The County subsequently learned that the disallowances were attributable to the costs of psychiatric care provided to persons at St. Vincent's and New York Hospital for the years 1984-1991. After a review of the disallowances and the allocation methodology utilized to calculate the amount due, the State reduced its demand to $6,939,333.80. The State seeks immediate reimbursement from the County for the full amount allegedly due utilizing the State's electronic funds transfer method.{**2 Misc 3d at 867}
[*3]
The County alleges it first received notice of the results of the federal Medicaid audit in 2003. The County claims that this was the first time they had learned of the federal audit, the disallowance litigation commenced in 1995, the memorandum opinion of the federal court issued on September 17, 1997 and the settlement agreement entered into May 28, 1998. The County contends that it has been 19 years since unspecified services were rendered to patients in freestanding psychiatric hospitals and more than five years after the disallowances were settled between the federal government and the State.
The County contends the State failed to provide any substantive information regarding the calculation of charges from the two psychiatric hospitals; failed to demonstrate how it assessed the costs against the County; failed to provide detailed facts of services provided for the 19-year period; failed to demonstrate how many of the Medicaid patients in the two hospitals were residents of Westchester County; and the State failed to seek reimbursement from the medical providersSt. Vincent's and New York Hospital. The County claims that their records do not go back as far as 1984 and no records exist for the time period in question. The County alleges that, for the period of 1993-2000, the average percentage of Westchester County residents receiving assistance from either of the two hospitals ranged from 23.6% to 72.4%. The County alleges that the State erroneously required the County to fund Medicare expenses for services rendered at the two hospitals when they were specifically excluded from the Medicaid program costing the County approximately $8.9 million in Medicaid contributions over the years.
NYSDOH alleges that St. Vincent's and New York Hospital were certified by the Department as freestanding psychiatric facilities and were institutions for mental diseases. The State acknowledges that the costs of the health care services are not eligible for federal Medicaid reimbursement for individuals residing in IMDs who are between the ages of 21 and 64.
However, the State alleges the costs of these health services are chargeable to the State Medicaid program to be paid by the State and local counties. The State contends that after the federal audit the cost of the disallowances is allocated between the State and those counties that share responsibility for the affected claims. The State determined Westchester County's allocated share totaled approximately $7.3 million.
The State contends that when federal funding is unavailable to the Department of Health for the costs of providing mental health {**2 Misc 3d at 868}care services, the Department may seek to obtain an adjustment from the counties (see, Social Services Law §§ 367-b, 368-a [1] [d]; 18 NYCRR 601.4 [f]). Generally, the State makes the initial payments to the providers of services and receives reimbursement from the counties for the appropriate share of the expenditures (see, Social Services Law §§ 367-b, 368-a). The State alleges since no federal funds were received, it seeks to obtain Westchester County's portion of the disallowance allocations resulting from the settlement agreement with the federal government in 1998.
The Department acknowledges that it notified the County approximately five years after the settlement agreement was attained with the federal government. However, the State alleges it has six years to make disallowance adjustments and the notification was timely (see, 18 NYCRR 601.5 [a]). The State alleges that it failed to adjust and credit the County with credits for those mentally disabled recipients that are solely the responsibility of the State (see, Social Services Law § 368-a [1] [h]). As a result of the adjustment, the amount sought by the State from the County was reduced from $7.3 million to $6.9 million.
[*4]
The State alleges that all county social services districts are aware that federal disallowances may occur and such disallowances must be reflected in adjustments to the districts' claims. The State alleges that the counties are on notice that they may be required to bear a portion of federal disallowances (see, 18 NYCRR 601.4 [f]). The State does not seek recoupment from the hospital providers. The State contends the hospitals provided services which they are entitled to be compensated. The State refutes the allegation that the two Westchester hospitals were overpaid and that the State must seek recoupment from the hospitals directly. The State also claims the County is not eligible for reimbursement of $8.9 million previously paid by the County. The State alleges that since no federal funds were forthcoming in regard to Medicaid reimbursement for the two hospitals, the State and the County were responsible to provide the required services. Therefore, the State claims no reimbursement is due the County for amounts previously paid.
Westchester County's allegation that the State's disallowance determination and demand for the payment of funds is barred by the statute of limitations and the doctrine of laches is unfounded (see, Matter of Cortlandt Nursing Home v Axelrod, 66 NY2d 169 [1985]).{**2 Misc 3d at 869}
The judicial standard of review of administrative determinations pursuant to CPLR article 78 is whether the determination is arbitrary and capricious, and a reviewing court is therefore restricted to an assessment of whether the action in question was taken "without sound basis in reason and . . . without regard to the facts" (see, Matter of Pell v Board of Educ., 34 NY2d 222, 231 [1974]; Kenton Assoc. v Division of Hous. & Community Renewal, 225 AD2d 349 [1996]). The test usually applied in deciding whether a determination is arbitrary and capricious or an abuse of discretion is whether the determination has a rational or adequate basis (see, Heintz v Brown, 80 NY2d 998 [1992]). The reviewing court in a proceeding pursuant to CPLR article 78 will not substitute its judgment for that of the agency unless it clearly appears to be arbitrary, capricious or contrary to the law (see, Matter of Flacke v Onondaga Landfill Sys., 69 NY2d 355 [1987]; Akpan v Koch, 75 NY2d 561 [1990]), "[When] the judgment of the agency involves factual evaluations in the area of the agency's expertise and is supported by the record, such judgment must be accorded great weight and judicial deference" (Matter of Flacke v Onondaga Landfill Sys., supra at 363). Moreover, in order to maintain the limited nature of review, it is incumbent upon the court to defer to the agency's construction of statutes and regulations that it administers as long as that construction is not irrational or unreasonable (see, Matter of Metropolitan Assoc. Ltd. Partnership v New York State Div. of Hous. & Community Renewal, 206 AD2d 251 [1994]). The court must give deference to and not substitute its judgment for factual evaluations within the agency's area of expertise (see, Matter of City of Rensselaer v Duncan, 266 AD2d 657 [1999]).
The determination of the State and the demand for $7.3 million from the County of Westchester is arbitrary and capricious and lacks a rational basis. The State had the responsibility to certify St. Vincent's and New York Hospital as institutions for mental diseases or IMDs. The State knew or should have known that by certifying the two Westchester County hospitals as freestanding psychiatric IMDs, said certifications would disqualify the institutions from Medicaid reimbursement (see, 42 USC § 1396d). Knowing that the two hospitals were precluded from receiving Medicaid funds, the State, over a prolonged period of time, allowed and recommended that St. Vincent's and New York Hospital file claims for Medicaid funds from the federal government, the State and [*5]local counties to cover the costs {**2 Misc 3d at 870}of mental health services provided. For many years the State was reimbursed with federal funds knowing that the two hospitals were ineligible for Medicaid reimbursement. Now, as a result of a federal audit and an adverse ruling in the Federal District Court, the State seeks to assess a portion of the disallowances upon the local counties for services provided to persons with mental disabilities.
The State commenced an action against the United States Department of Health and Human Services pertaining to the disallowance assessments resulting from the audit. In a memorandum opinion and order, the court held,
"Because the Medicaid statute excludes patient care at an institution for mental disease from reimbursement, requesting certification as a 'psychiatric hospital' necessarily disqualifies an institution from Medicaid reimbursement . . . See 42 U.S.C. § 1396d; Connecticut Dep't of Income Maintenance v. Heckler, 471 U.S. 524, 529, 105 S.Ct. 2210, 2213 . . . (1985)." (See, State of New York v Shalala, 1997 WL 610771,*2 n 2, 1997 US Dist LEXIS 14138, *4 n 2 [SD NY, Sept. 17, 1997, Martin, J.].)
Generally, the State and local counties are responsible to pay a portion for medical assistance and care of needy persons after deducting any federal funds received (see, Social Services Law § 368-a [1]). However, the counties are not responsible to pay the State for any portion of the cost of medical assistance to persons who are receiving psychiatric services (see, Social Services Law § 365). In addition, Social Services Law § 368-a (1) (h) requires the State to pay for 100% of the cost for medical assistance to those individuals who have a mental disability. It appears from the record that the State used federal and county funds to offset its obligation to pay 100% of the costs for the care of the mentally disabled who were treated at St. Vincent's and New York Hospital for the time period subject to the federal audit. In addition, the State has not adequately demonstrated how it arrived at certain calculations or methodologies in assessing disallowance charges as utilized in exhibit A of the Meister affidavit, dated April 21, 2003.
As a result of escalating costs which are attributable to the policy inaugurated by the State in deinstitutionalizing mentally ill patients, the State enacted Social Services Law § 368-a (1) (h), also known as the Turnover Statute. The State claims that Social Services Law § 368-a (1) (h) does not define the term "{**2 Misc 3d at 871}mentally disabled." In Krauskopf v Perales (139 AD2d 147 [1988]), the Court determined that inpatient psychiatric services are eligible for 100% State share reimbursement, after deduction of any federal share, if the individuals receiving the services are on the Office of Mental Health (OMH)/Office of Mental Retardation and Developmental Disabilities (OMRDD) master file of persons discharged from an OMH psychiatric center or an OMRDD developmental center between April 1, 1971 and December 31, 1992 who had 90 or more cumulative days of inpatient treatment. The State has offered no rational explanation as to what individuals on the State's exhibit A list meet or do not meet the definition of "mentally disabled." The State has not presented any evidence to diminish their responsibility to pay 100% for the treatment of the mentally disabled as required by the Turnover Statute. Social Services Law § 368-a (1) (h) was established as an effort to reimburse and assist local counties from the burdens created by the [*6]State's deinstitutionalization policies (see, Krauskopf v Perales, supra at 152-153). The State has not offered or adequately demonstrated that the County is responsible for a proportionate share of the disallowance costs of Medicaid funds resulting from the federal audit and settlement. The State certified the two hospitals as IMDs knowing that they would not be eligible to participate in the Medicaid reimbursement program. The documentation presented by the State is not sufficiently detailed to provide a rational explanation to justify its proportionate assessment of Medicaid disallowances against the County of Westchester.
This court concludes that the petitioner has demonstrated that the disallowance determination and demand of respondents was arbitrary and capricious and lacked a rational basis.
Accordingly, the application of petitioners is granted.